# Somerset and Cambria Railroad Company *versus* Galbraith.

1. In an action on the case for damages, the plea of "not guilty" operates only as a denial of the breach of duty or wrongful act alleged, not as a denial of the statement of facts stated in an inducement filed with the *narr*.

2. In an action on the case by the widow of A. against the S. & C. R. R. Co. for negligence resulting in the death of A., the plaintiff's *narr*. averred, by way of inducement, that the S. & C. R. R. Co. was a corporation under the laws of this Commonwealth, "and was the owner and proprietor of the S. & C. Railroad, and of the engines and cars running over the same; and that being such owner. . . . . . her husband was employed as a conductor of a freight train of cars on said road." The S. & C. R. R. Co. pleaded not guilty, and accompanied its plea with an averment of special matter, setting out that "the road of the defendant company" was opened . . . . that the condition of the road was well known to A., and "he accepted employment under said company" as a conductor. At the trial the S. & C. R. R. Co. denied liability, on the ground that the road was built, controlled and operated by the B. & O. R. R. Co., and that A. was the latter company's servant.

    *Held*, that in view of the admission contained in the pleadings little or no further evidence was necessary to show that A. was the S. & C. R. R. Co.'s servant, and the evidence produced, though meagre and somewhat conflicting, was held sufficient.

3. A., as conductor of the freight train, was subject to a rule of the company which directed him to take his position in about the middle of the train when it was going down grade so as to be able to properly direct the brakemen. Just as the train started down a slight grade of about a mile in length, A. went forward to the engine and told the engineer "to run slow and look out for the Iron Company's engines; they are liable to come outside their limits." [The train was running, at the time, under a special order to look out for the Iron Company's engines at a point some distance beyond.] While giving this direction to the engineer, and receiving his answer, the engine and some of the cars were thrown from the track—owing to a defect in the road bed—and A. was killed. If he had remained in the middle of the train he would

[Railroad Co. v. Galbraith.]

probably have been uninjured. In an action against the company by the widow,

*Held,* that the court committed no error in refusing to charge, as a matter of law, that A. was guilty of contributory negligence, and that the plaintiff could not recover. While a conductor should be held to a reasonable observance of rules, still he has a general duty and discretion to use his judgment for the safety of his train in case of an emergency; and if there was any probability of an obstruction not known to the company, it was A.'s duty to guard against it, and he was entitled to walk to the engine for that purpose.

February 10th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Somerset county:* Of January Term, 1885, No. 3.

This was an action on the case by Mary E. Galbraith, widow of William Galbraith, against the Somerset and Cambria Railroad Company, to recover damages for the death of plaintiff's husband, caused, as alleged, by the negligence of the defendants.

The plaintiff's declaration averred, by way of inducement, that the defendant company was a corporation under the laws of this Commonwealth, and " the owners and proprietors of the Somerset and Cambria Railroad, and of the locomotives and cars running over and upon the same, . . . . . and that being such owner . . . . . William Galbraith, husband of the plaintiff below, became and was employed as a conductor of a freight train of cars of the said defendants on said road."

Plea, not guilty. The plea was accompanied by a special averment (set out at length in the opinion of the Supreme Court), in which it was alleged that William Galbraith had " accepted employment under said company," and was familiar with the condition of the road bed and rolling stock.

On the trial, before BAER, P. J., the following facts appeared:—The Somerset and Cambria Railroad Company was a corporation under the laws of Pennsylvania. Its road, which extended from Rockwood, in Somerset county, to Johnstown, in Cambria county, was built and operated by the Baltimore and Ohio Railroad Company.

The work of building the road was completed in December, 1880, and in the early part of 1881 it was opened for freight and passenger traffic. In May, 1881, William Galbraith was made conductor of a freight train on said road, passing daily over it between Rockwood and Johnstown. On June 5th, 1881, Galbraith started from Rockwood for Johnstown in charge of a freight train composed of an engine, and from twenty to thirty cars. At Somerset, ten miles from Rockwood, he and the engineer, J. E. Sypher, each received

13 OUTERBRIDGE—3

the following written order: " Run to Johnstown and return to Somerset as an irregular freight; flag between the first bridge west of Johnstown and Johnstown against the Cambria Iron Company's engines."

Among the general rules for the government of employees of the Baltimore and Ohio Railroad were the following:—

Rule 99. " The conductor has charge of the train upon the road and is responsible for its safety and management in obedience to the rules of the company; he must see that all the brakemen are on the alert and attending to their duties."

Rule 103. " Conductors must see that their brakemen are placed at proper distances from each other on the top of the cars and remain in such position, while the train is in motion, so as to be of the most immediate and effective service in case of emergency, and in descending grades he will station himself in the middle of the train in order to direct his brakemen to slacken or hasten speed as may, in his judgment, be required. Where grades are heavy the brakes should be slightly applied before starting to descend, and carefully watched while descending, that they may not heat or slide the wheels."

At a point on the road called Hogback tunnel, which was about a mile from a certain stone culvert, Galbraith went to the engine and said to the engineer, " Look out—run slow, and look out for the Cambria Iron Company's engines; they are liable, sometimes, to come outside their limits." To this the engineer replied, " Bill, if they are outside their limits they are supposed to look out for us, and if we hit them it is their look out, and not ours."

It was in evidence that from Hogback tunnel to within about 300 feet of the culvert, it was slightly down grade, and that the engine was using no steam. The last 300 feet were level.

When within a few feet of the culvert the engine and four or five cars left the track and crossed the culvert on the ties. The engine ran about 100 feet down a depression on the north side of the culvert, several cars were turned over, others pulled off the track, and the rest left undisturbed. Galbraith was killed, and his body found under the trucks of the tender.

The plaintiff claimed that the " fill of earth " at either side of the culvert had sunk away, or settled to the depth of a foot; that the road bed on each side of the culvert had fallen away until it was four or five inches narrower than the ties; and that the foreman of that section had not been furnished with sufficient material to keep up the track in proper condition at this point, although he had made repeated requests for it.

The plaintiff submitted, *inter alia*, the following points :—

" If the jury believe that William Galbraith was employed for a period of thirty or more days in running a freight train as conductor regularly one trip each way daily on the Somerset and Cambria Railroad, and the Somerset and Cambria Railroad Company expressly or tacitly assented to such service, the said Somerset and Cambria Railroad Company may be liable in this action."

" That under the pleadings and the evidence the said William Galbraith is to be regarded as a servant of the Somerset and Cambria Railroad."

*Ans.* " These two points we answer as one. From all the evidence in this case, and the pleadings in the case, we think the case properly brought against the Somerset and Cambria Railroad Company."

The defendants asked the court to charge :—

*First.* " That there is no evidence in this case that the plaintiff was in the employ of the defendant company, and therefore the verdict must be for the defendant."

*Ans.* " This, you perceive, is directly in conflict with the last two points of the plaintiff. We say that there may be a recovery against this company, provided the plaintiff makes out a case of negligence on its part, and due care on the part of Galbraith. This point we refuse."

*Seventh.* " That as the plaintiff has shown that the deceased was running under a special order to ' Run to Johnstown and return to Somerset as an irregular train; flag between the first bridge west of Johnstown and Johnstown against Cambria Iron Company's engines,' etc., then it was his duty to have run the train to the bridge and stopped; and if he left his position on the train and went upon the engine in violation of the general order requiring him to remain on the top of the train while descending grade to repeat the terms of a written order which had been given to him and the engineer, and which the engineer was equally bound to obey, and the injury was received while on the engine, then he was guilty of contributory negligence, and the verdict must be for the defendant."

*Ans.* " Going upon the engine under such circumstances as alleged in this point was negligence on the part of Galbraith; whether it was contributory negligence we leave as a question of fact to the jury. If you find it was contributory negligence, there can be no recovery."

*Eighth.* " That the fact that the engines of the Cambria Company may have had a different limit on some prior occasion did not warrant the conductor in assuming that they had a different limit on the day of the accident to that fixed in the

order; that it was his duty to regard the order as to the limit of such engines, and if he went upon the engine to deliver to the engineer an order to look out for such engines at a point outside of the limits fixed by the order, and the injury occurred when on the engine, then he was guilty of contributory negligence and the verdict must be for the defendant."

*Ans.* "Such entry upon the engine of Galbraith, as is contemplated by this point, was negligence. Whether it was contributory negligence or not we leave to you as a question of fact. If you find it was, there can be no recovery; that would depend on the necessity of his going there at that time to communicate something that was not embraced in his written orders."

Verdict for plaintiff for $1,200, and judgment thereon; whereupon the defendants took this writ, assigning for error the refusal of the court to direct a verdict for the defendants, and the answers to points as above set out.

*W. H. Koontz* (with whom was *Johns McCleave*), for plaintiffs in error.—On the trial of the case there was no evidence to show that Galbraith was in the employ of the Somerset and Cambria Railroad Company, nor that said company was the owner of the engines, cars, etc., running over said road. There was evidence, however, that the Baltimore and Ohio Railroad Company had built the road, owned it, was running it at the time, and that Galbraith was in the employ of said company. If the plaintiff intended to charge the defendant company as being the owner of the road, and with negligence in keeping up its road bed, track, etc., then the declaration should have averred that the deceased was in the employ of the Baltimore and Ohio Railroad Company; that said company was operating the road of the defendant company, and that it was the duty of the latter to keep up and maintain its road bed, etc. The plaintiff having failed to establish a material averment of the declaration, namely, the relation of master and servant, it is submitted that the judgment cannot be sustained. The testimony in the case disclosed such facts as establish contributory negligence on the part of Galbraith. The facts, about which there can be no controversy, and which are in the main established by the plaintiff's witnesses, make out a most flagrant breach of duty on the part of Galbraith. He deserted his post in violation of an order of the company which he was bound to obey; he left his train uncontrolled and went to a post of danger, and remained there until the accident took place. The order which he took to the engineer was entirely unnecessary, and had he remained on the train where the rule required him to be he would not

[Railroad Co. v. Galbraith.]

have been injured. These facts certainly constitute contributory negligence, and the jury should have been so instructed: McCully v. Clark, 4 Wr., 399; Hoag v. Lake Shore & M. S. R. R. Co., 4 Nor., 297; Goshorn v. Smith, 8 W. N. C., 289; 11 Norris, 435; Baker v. Fehr, 1 Out., 70; Dun v. Seaboard & R. R. R. Co., 16 Am. & Eng. R. R. Cas., 368; Slater v. Jewett, 5 Id., 515; Mulherrin v. Del. L. & W. R. R. Co., 31 P. F. S., 366; East Tenn. V. & G. R. R. Co. v. Toppins, 11 Am. & Eng. R. R. Cas., 223.

*F. J. Kooser* for defendant in error.—The declaration avers that the Somerset and Cambria Railroad Company is a corporation in Pennsylvania, &c., "the owners and proprietors of the Somerset and Cambria Railroad and the locomotive engines and cars running over and upon the same" between Rockwood and Johnstown, and that being such owner, &c., William Galbraith, husband of plaintiff below, "became and was employed as conductor of a freight train of cars of said defendant on said road, &c." The defendant's plea makes no denial of these facts and the "special matter" filed with, and made part of the plea, admits that the road (Somerset and Cambria) is "the road of the defendant company" and that William Galbraith "accepted employment under said company as a conductor on freight trains," and "continued in the service of the company" until the accident resulting in his death. And therefore the answer of the court to the points covered by the first three assignments was not error.

The vital question is, did the uncontradicted testimony in this case disclose such facts as established contributory negligence on the part of Galbraith, and was it the duty of the court to have so told the jury? Conductor Galbraith had both right and duty on the engine, and in the cases cited by counsel for plaintiffs in error, in illustration of the reciprocal duties of master and servant, and upon which they rely to release the master from liability, these elements were wanting. We therefore submit that there was no error in the charge of the court below by which defendants could have been injured, and that the case was properly and necessarily given to the jury: Crissey v. Hestonville, etc., Railway Co., 25 P. F. S. 86; McKee v. Bidwell, 24 Id., 218; Penna. R. R. Co. v. Barnett, 9 P.F. S. 264; Johnson v. Bruner, 11 P. F. S. 62 and 64; City of Harrisburg v. Saylor, 6 Norris 221; Penna. R. R. v. Ogier, 11 Casey 71; Baker v. Fehr, 1 Out. 72.

Mr. Justice CLARK delivered the opinion of the court, October 5th, 1885.

In the argument of this case, but two questions were presented for the determination of the court:—

1. Does the evidence show that William Galbraith, at the time of the fatal injury, was in the service of the defendant company?

2. Was it the duty of the court to instruct the jury, as an inference of law from the facts proved, that the deceased was guilty of contributory negligence?

Under the pleadings in the cause, the first question, we think, becomes unimportant. The declaration expressly avers, by way of inducement, that the Somerset and Cambria Railroad Company is a corporation, under the laws of this Commonwealth, and " the owners and proprietors of the Somerset and Cambria Railroad, and of the locomotive engines and cars running over and upon the same," &c., and that being such owner, &c., William Galbraith, husband of the plaintiff below, "became and was employed as a conductor of a freight train of cars of said defendant, on said road." The defendant's plea was "not guilty," which under the rules of court operated only " as a denial of the breach of duty, or wrongful act alleged to have been committed by the defendant, and not of the facts stated in the inducement." The plea was accompanied by an averment of special matters upon which the defendants gave notice they would rely at the trial as follows :— " That the road of the defendant company was opened and trains commenced running on the same," &c., " that the condition of the road was well known to the said William Galbraith, and that he accepted employment *under said company*, as a conductor on freight trains with full knowledge of its condition; that if there was any defect in the road at the culvert at or near 'Ferndale Station,' either in said culvert, or road-bed, or rails, at or near the same, or in the locomotives, tenders, cars, coupling and machinery, etc., the same was well known to the said William Galbraith for some time prior to the alleged injury, and that he continued in the service of the company with said knowledge and accepted the risk of said employment." In view of this solemn and deliberate admission of the defendants, entered of record in the cause, can it be pretended there is no evidence that William Galbraith was in their employment?

It is true, the evidence taken at the trial on this point was meagre and unsatisfactory, perhaps to some extent conflicting, but in view of the condition of the pleadings, but little if any proof was required. The purpose to be attained by the filing of a notice of special matter with the general issue plea, is to inform the adverse party of the precise question in controversy; it is to lead the litigants to the real matter in dis-

pute, not to mislead, and what is thus unequivocally admitted need not be shown.

The second question in the cause, as to the alleged contributory negligence of the decedent, is the substantial and important one.    In the consideration of it we assume the negligence of the defendants, and its causal relation to the injury ; no question is here made as to that, and we are controlled by the finding of the jury.    What constitutes negligence, in a particular case, we have frequently said is, in general, a question for the jury.    The veracity of the witnesses ; the conflict in the evidence ; the reasonable doubt as to the facts tending to prove negligence, or as to the just inference to be drawn therefrom, and the varying standard of duty, according to the particular circumstances proven at the trial, are matters, which taken together or separately, cause the question, generally, to be one, under proper instructions, for the consideration of a jury.    There are cases, it is true, where the facts are admitted or undisputed and the standard of duty is determinate, in which it is the duty of the court to declare upon the question of negligence as matter of law.    A servant cannot recover where, from neglect of known duty, or want of care on his own part, he has contributed to the injury ; if he recklessly or needlessly expose himself to danger, or by disregard of his duty to his employer, inflicts injury upon himself he must accept the consequences of his own act.    This is a proposition so plain, and so well established, that a reference to authorities in support of it is unnecessary.

If Galbraith therefore, as an employee of the company, negligently left the post of duty assigned to him under the rules and regulations of the company, where he would have received no injury, went upon the engine, where his duty did not call him, thereby lost control of his train, and thus contributed to the injury which caused his death, the duty of the court would be plain ; such a course of conduct would undoubtedly constitute negligence, and there could be no recovery in this case.    But we cannot assume all these facts ; Galbraith was the conductor of the train, he was bound to exercise in the interest of his employer all due care and caution.    If he knew of any obstruction on the track, or had reason to expect any, it was his clear duty to guard against it.    "The conductor," as Sanner, the witness, says, "is held responsible for the safe transport of his train, and that requires of him, in cases of this kind, to use judgment."    His duty under the general rules of the company "in all cases of doubt" was to "take the safe side ;" and what is the safe side in any given exigency, is, of course, a question for the exercise of judgment.    He had, it is true, certain orders from the company under the general

[Railroad Co. *v.* Galbraith.]

regulations, one of which was, that he should remain in the middle of the train, to command the crew, in regulating the speed on descending grades. He was held, of course, to the reasonable observance of all these rules, but he had a general duty and discretion to exercise in an emergency. His duty varied according to the circumstances. Unless some exigency calls him away he must remain at his post, whilst the train is on a descending grade, but he must necessarily be allowed some latitude in the exercise of judgment for the safety of his train. When Galbraith came upon the engine, he said to Sypher, the engineer, "Look out—run slow, and look out for the Cambria Iron Company's engines, they are liable, sometimes, to come outside of their limits." He made no other communication, and an inference may be drawn that this was the object of his errand. If the fact were known to him, that the engines of the Cambria Company, at times exceeded their bounds, it was his plain duty to exercise a reasonable precaution against a collision with them; if they had on previous occasions exceeded the limit, they might do so again. The train was running on special order No. 4, with instructions to flag against these engines between the first bridge west of Johnstown and Johnstown only, but if there was any probability of an obstruction, not known to, or considered by, the company, in making that order, it was his duty to guard against it, and he was privileged to walk on all parts of the train for that purpose. Thus whilst his duty, under general orders, were on a descending grade, to be in the middle of the train, he was liable in an exigency to be called elsewhere.

If there was any condition of things existing, or reasonably apprehended, which justified the conductor in leaving his place, to communicate with the engineer, and no more time was taken than was necessary for the purpose, he certainly cannot be convicted of negligence; and these facts although disputed at the trial were by the jury determined in his favor.

The charge of the court may not be strictly accurate in all respects, but its inaccuracies, if there be any, did the defendant no harm; upon the points discussed in this court it was certainly correct.

The judgment is affirmed.