## CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY ET AL. *v.* GOSSETT, ADMINISTRATRIX.

[No. 21,133.    Filed March 10, 1909.    Rehearing denied June 23, 1909.]

1. PLEADING.— *Complaint.*— *Master and Servant.*— *Violation of Duty.*—*Nonassumption of Risk.*—A complaint by a servant against his master for damages for personal injuries should show the master's violation of duty, and the nonassumption of the risk by the servant.  p. 531.

2. MASTER AND SERVANT.—*Negligence.*—*Dangers.*—It is the duty of the master to protect his servants against his own negligence, and against all unusual and unexpected dangers known to the master and unknown to the servant.  p. 532.

3. MASTER AND SERVANT.—*Employers' Liability Act.*—*Engineers.*—*Signalmen.*—Under §8017 Burns 1908, cl. 4, Acts 1893, p. 294, §1, railroad companies are liable for the negligence of employes in charge of a switch yard, signal, or locomotive engine.  p. 532.

4. MASTER AND SERVANT.—*Employers' Liability Act.*—*Engineers.*—*Signalmen.*—*Assumption of Risk.*—A brakeman injured by the negligence of a signalman or a locomotive engineer, under section one of the employers' liability act (Acts 1893, p. 294, cl. 4, §8017 Burns 1908), cannot be held to have assumed the risk of such signalman's or engineer's negligence.  p. 532.

5. PLEADING.—*Complaint.*—*Master and Servant.*—*Negligence of Engineer and Signalman.*—A complaint alleging that the signalman of the lessor railroad company negligently changed a stop, to a proceed, signal and that the engineer of the operating railroad company negligently and without notice started his engine forward with a violent jerk after a stop signal had been given, and that by reason of such negligence the brakeman on such train was thrown from his car and killed, states a cause of action against both companies.  p. 532.

6. PLEADING.— *Complaint.*— *Master and Servant.*— *Common-Law and Statutory Liability.*—A complaint alleging that the defendant lessor railroad company negligently changed a stop, to a proceed, signal and that the engineer of the defendant operating railroad company negligently started his engine in violation of a rule of such company, causing plaintiff's decedent—a brakeman on the operating road—to sustain fatal injuries, states a common-law cause of action against the lessor company, and a statutory cause (§8017 Burns 1908, cl. 4, Acts 1893, p. 294, §1) against the operating company.   pp. 533, 534, 536.

7. PLEADING.—*Complaint.*—*Demurrers.*—*Joint Defendants.*—A separate demurrer by joint defendants should be overruled, where the complaint is sufficient as to each.   p. 534.

8. ACTION.— *Torts.*— *Joint Tort-Feasors.*— *Liability.*— *Election.*— Joint tort-feasors are individually and collectively liable for all of the damage done, and the plaintiff may elect to sue one or all.   p. 535.

9. RAILROADS.—*Operating and Lessor Companies.*—*Liabilities to Employes.*—A lessor railroad company retaining its own signalman, to whose directions the operating company's employes are bound to conform, is liable to the operating company's employes for injuries caused by the negligence of such signalman.   p. 536.

10. MASTER AND SERVANT.—*Assumption of Risk.*—*Operating and Lessor Railroad Companies.*—The servant of an operating railroad company does not assume the risk of negligence of the lessor company's servants, since they are not fellow servants.   pp. 536, 539.

11. PLEADING.— *Complaint.*— *Proximate Cause.*— *Railroads.*—*Master and Servant.*—A complaint alleging that the signalman of a lessor railroad company negligently changed a stop, to a proceed, signal, thereby causing the engineer of the operating company to start his train when it was coming to a stop, and causing the train to jerk and throw a brakeman under the train, to his death, sufficiently shows that the change of signal caused such death.   p. 537.

12. TRIAL.—*Directing Verdict.*—*Evidence.*—Where there is some evidence tending to sustain each material allegation in plaintiff's complaint, or where the evidence is in conflict, or two reasonable inferences can be drawn therefrom, a verdict for the defendant cannot be directed.   p. 537.

13. TRIAL.—*Instructions.*—*Application of Evidence to Complaint.*— *Common-Law and Statutory Paragraphs.*—An instruction that common-law and statutory paragraphs of a complaint for personal injuries are inconsistent, and that the evidence should be applied exclusively to the first or to the second paragraph, is properly refused.   p. 538.

14. TRIAL.—*Instructions.—Failure of Proof.—Railroads.—Orders. —Inferences.*—Where a paragraph of complaint required for its support proof that defendant lessor railroad company's signalman had knowledge of the operating company's order to stop at his station, an instruction that he had no such knowledge should be refused, where the evidence showed that the lessor company sent a dispatch containing such order to all its stations, including his. p. 538.

15. TRIAL.—*Instructions.—Railroad Customs.—Evidence.*—An instruction as to the custom of defendant railroad company's signalmen in manipulating signals should be refused, where there is no evidence of such custom. p. 539.

16. TRIAL.—*Instructions.—Assuming Facts in Issue.*—An instruction that a certain rule of defendant railroad company had no application to the case should be refused, where that was the controlling issue in the case. p. 539.

17. TRIAL.—*Instructions.—Assumption of Risk.—Railroads.—Employers' Liability Act.*—In an action by the personal representative of a deceased brakeman against his company for the death of such brakeman caused by the negligence of his engineer, and against defendant lessor railroad company for the death of such brakeman caused by the negligence of its signalman, instructions as to decedent's assumption of the risk should be refused, since no such question could arise in the case. p. 539.

18. MASTER AND SERVANT.—*Assumption of Risk.—Railroads.—Sudden Starting of Engine.*—The risk of danger from an engineer's sudden starting of his train, after a signal to stop had been given to the brakeman, is not assumed by such brakeman. p. 540.

19. TRIAL.—*Instructions.—Railroads.—Violation of Rules.—Negligence.*—An instruction, in an action for the death of a brakeman, that if a rule of the railroad company existed covering the conduct of such brakeman, and he was obeying the rule, and the company, without notice to him, violated such rule, thereby causing his death, the company is liable, is correct. p. 540.

20. MASTER AND SERVANT.—*Violation of Rules.—Contributory Negligence.—Jury.*—The servant's positive and negligent violation of the master's reasonable rules, with knowledge thereof, and without excuse or justification, constitutes contributory negligence, and precludes the servant's recovery, the questions of legal excuse or justification being ordinarily for the jury. p. 541.

21. TRIAL.—*Instructions.—Interpreting Written Rules.—Railroads.* —Where a railroad company's rule was of doubtful application to the transaction causing a brakeman's death, an instruction that the jury should consider the actions and conduct of the parties as to the operation of such rule, and from that and the rule itself determine its applicability to such transaction, is proper. pp. 545, 547.

22. Contracts.—*Indefinite.*—*Parol Evidence.*—Where a contract is indefinite, parol evidence of the practical interpretation thereof by the parties is admissible.   p. 546.

23. Appeal.—*Invited Error.*—*Railroads.*—*Rules.*—*Oral Evidence of Application of.*—Where a railroad company first introduced oral evidence showing that its rule did not apply to the case, such company cannot complain of an instruction submitting the question of its applicability to the case to the jury, the error, if any, being invited.   p. 547.

24. Appeal.—*Weighing Evidence.*—The Supreme Court · will not weigh conflicting evidence.   p. 548.

From Superior Court of Marion County (70,806) ; *Lawson M. Harvey,* Judge *pro tem.*

Action by Hattie Gossett, as administratrix of the estate of Robert A. Gossett, deceased, against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, and another. From a judgment on a verdict for plaintiff for $8,875, defendant appeals.   *Affirmed.*

*Baker & Daniels, Leonard J. Hackney, Frank L. Littleton* and *John J. Kelly,* for appellants.

*Willard Robertson* and *Harding & Hovey,* for appellee.

Hadley, J.—Appellee's decedent, a brakeman on a freight-train of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, and hereinafter designated as the Big Four, was killed by falling between cars while the train was being operated over a portion of the road of the Indianapolis Union Railway Company, hereinafter designated as the Belt road, by the alleged negligence of both of said appellants.

The material facts set out in the first paragraph of the complaint are as follows :  The Big Four in operating one of its lines from Brightwood to the city of St. Louis, Missouri, uses a part of the tracks and equipment of the Belt road, and in running a Big Four freight-train over the Belt road the employes in charge of the Belt road, and those in charge of said train, in handling and in directing the same, were in the common service of both defendants.   The plaintiff's de-

cedent, Robert Gossett, was a brakeman on said Big Four freight-train which left Brightwood for St. Louis, with orders to stop at Norwood to take on additional cars. William Cates was the conductor, and Thomas Cain the engineer, in charge of the engine. The conductor was in control of said train, and had authority to give orders to said Gossett, as a brakeman thereon, and did order him to go on top of the train, near to the locomotive, while the train was in motion, and near to the point in said Belt road where the same is crossed by the Cincinnati division of the Big Four, in the vicinity of Norwood. The latter place is connected with the Belt road tracks by a cross-over track. Near said cross-over and the crossing of the Belt road tracks by the Big Four, as aforesaid, the Belt road company maintains a signal, switches and a side-track in charge of its own employe as signalman and switchman, and it was the duty of said employe to signal trains running on said tracks at that point, and to set and manage the switches and tracks so as to keep trains from colliding with each other. Near the signal was a passing track on the north side, and connected with the track occupied by said freight-train. Said freight-train was in all things subject to said signalman's guidance at that point, and he had been informed by the defendants of the orders of said freight-train. When the train approached the signal, the latter was so placed by the signalman as to signify to the engineer that he should bring the train to a stop. West of the signal, the track upon which the freight-train was running was obstructed by another train, which fact was known to the decedent. It was defendants' duty, and all persons in charge of the train, to bring it to a full stop before it reached the signal, and before it was run upon any different track, in accordance with a published rule of the defendants, as follows:

"If necessary to change any route for which the signals have been cleared for an approaching train, or en-

gine, switches must not be changed or signals cleared for any conflicting route until the train or engine for which the signals were first cleared has stopped.''

Upon the display of said stop signal, engineer Cain was in the act of stopping the train, and the decedent then believed, and had a right to believe, that the train was about to be stopped. It was the duty of the signalman and the engineer to stop the train, in compliance with said rule; but the complaint alleges that, ''disregarding their said duties, they did not stop said train, nor attempt to do so, but negligently, and in violation of said rule, caused the same suddenly to be started with great force, without signal or warning to plaintiff's decedent, who had no knowledge, or means of knowing, that same would be done. And said signalman, knowing that said train should be stopped, as herein averred, and having given the signal to stop, and in violation of said rule and without exercising due care, negligently, and as said train was nearing said signal, manipulated the same and changed and cleared the signal so as to signal that said train might go forward, and negligently and in violation of said rule manipulated and changed said switch tracks so as to guide said train into said side-track to the north and parallel with the track upon which said train was running, as aforesaid. And said engineer in charge of said locomotive engine, having said train orders, and full knowledge of same, and knowledge of said rules governing him in the management of said train, and well knowing that he should not run upon said switch, nor change the route over which his said train orders directed him, until he had stopped said train, and was fully informed of a change in his orders, and the reasons therefor, negligently, on receiving said signal of the signalman, started his engine anew with great force, without bringing same to a stop, or attempting to do so, and ran said train on said side-track.''

It is further averred that, when the train was started anew for the purpose of running into said side-track, the

decedent was on top of the train, where he was ordered by his conductor to go, and, while in the exercise of due care, the negligent acts of defendants' servants—the signalman and the engineer, aforesaid—caused the decedent to be jerked and thrown between the cars and killed.

The defendants separately demurred to each paragraph of the complaint, which being overruled, the issues were joined by the general denial.

There was a verdict and judgment for the plaintiff against both defendants.

The first question presented is the sufficiency of the first paragraph of the complaint.

The Big Four presents two objections to this paragraph: (1) that it fails to show the breach of a duty owing by the defendants to the decedent; (2) that it fails to show that the cause of injury was not one of the risks assumed by an acceptance of the employment. It is clear that the liability of the defendants can only be affirmed upon the theory that both a violated duty and a nonassumption of the risk are shown. *City of Indianapolis* v. *Emmelman* (1886), 108 Ind. 530, 532; *Cleveland, etc., R. Co.* v. *Parker* (1900), 154 Ind. 153.

The theory of the first paragraph is that the decedent lost his life by the negligent handling of the train on which he was employed, by the engineer's failing to bring the train to a stop before reaching a stop signal, and by the negligence of the Belt road signalman, in charge of the semaphore, in changing the stop signal to a proceed signal before the train had stopped, and by the further negligence of said engineer in suddenly and without any warning to the deceased that he was about to do so, increasing the speed of the train by an unexpected and violent jerk, which threw the decedent off the train and between the moving cars, all in violation of clause four of section one of the employers' liability act (Acts 1893, p. 294, §8017 Burns 1908), and of rule seventy-nine of both defendants.

It is the duty of the master to protect his servant against the master's own negligence, and against all unusual and unexpected perils of the employment known to the master and unknown to the servant, and which the latter might not learn by the exercise of reasonable care. *Pennsylvania Co.* v. *Ebaugh* (1899), 152 Ind. 531, 534; *Indiana, etc., R. Co.* v. *Bundy* (1899), 152 Ind. 590, 596.

It is clearly charged in the first paragraph that the accident happened by the negligence of the employe of the Belt road in charge of a signal, and by the negligence of the engineer in charge of the engine drawing the train, without any fault or negligence on the part of the decedent, and that the decedent and said employes were fellow servants engaged in the same common service.

By clause four of §8017, *supra*, it is made a railroad company's duty to answer to its employe who has been injured, without the latter's fault, by the negligence of a co-employe in charge of a switch yard, a signal or a locomotive engine. This duty is defined and imposed by the legislature, and cannot be waived, assumed or escaped. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319; *Bessler* v. *Laughlin* (1907), 168 Ind. 38; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664. A railroad brakeman, being himself in the observance of due care and diligence, under §8017, *supra*, has the right to presume that fellow employes in charge of a signal, or of a locomotive engine attached to his train, will not be guilty of negligence in manipulating such railroad appliances. He will not be held to have assumed a risk which the statute requires the master to assume. *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290.

The first paragraph alleges that the Belt road's employe in charge of a signal negligently changed it from a "stop" to a "proceed" order, before the approaching train had stopped, and that the train was at once, by

the engineer in charge, negligently speeded forward, with a sudden and violent jerk, without stopping at the signal, all in violation of rule seventy-nine, and without notice or warning to the deceased, or knowledge or means of knowledge on his part, that the signalman was about to change the signal, or that the engineer was about to jerk the train.   It is further shown that the decedent was a fellow servant of both the signalman and the engineer, and, while in the exercise of due care, was injured by the joint or concurring negligence of both defendants.   We think the first paragraph sufficiently shows a nonassumption of the risk, and a liability against both defendants.

The second, is a common-law paragraph.   It contains all the averments of the first, and makes additional allegations, in effect, as follows:   That the defendants are separate Indiana railroad corporations, owning and operating separate and distinct railroads in said State; but by mutual agreement the Big Four uses, in common with its owner, a certain part of the Belt road at the city of Indianapolis, to pass the former's freight-trains from the eastern to the western part of said city; that under said operating agreement the track, switches, turnouts, signals and other appliances remain under the dominion of the Belt road and its employes; that the directions and movements of the freight-trains of the Big Four, while on the tracks of the Belt road and passing thereover, are under the absolute control of the switchmen and signalmen in the employ of the Belt road; that on the day and at the place of the accident, one Kennedy, an employe of the Belt road, had charge of its signals, switches and tracks, and the Big Four freight-train, upon which the decedent was employed, was subject to the signal and guidance of said Kennedy; that as the decedent's train approached, the signal in charge of said Kennedy was by him set to indicate to the approaching trainmen that said train should come to a stop when nearing that point; that both defendants had a rule (the one set

out in the first paragraph) to the effect that when the sig-
nal is set for an approaching train to stop it must not be
changed to a proceed signal, nor switches changed for a con-
flicting route until the approaching train has come to a stop;
that when the decedent's train was approaching said signal,
and while it was still moving at the rate of from four to
six miles an hour, Kennedy, in disregard of said rule, negli-
gently changed said signal to a proceed signal, and neg-
ligently changed the route of said train, by opening to it a
switch to a conflicting route. Then follow the averments,
as in the first paragraph, concerning the negligence of the
engineer in charge of the decedent's train in acting upon
Kennedy's proceed signal before bringing his train to a stop,
etc., and thus concludes: "But disregarding their said du-
ties, they [the defendants, signalman and engineer] did
not stop said train, nor attempt to do so, but negligently, and
in violation of said rules, caused said train to be suddenly
started anew with great force, and with a sudden and un-
usual jerk, without signal or warning to the decedent, who
had no knowledge, or means of knowing, that the same would
be done as aforesaid." The negligence relied on in this
paragraph is charged against the defendants, in common and
severally, upon the evident theory of the law that, where
separate and independent acts of negligence by different
persons concur in perpetrating a single injury, each is fully
responsible for all the damage. *Cleveland, etc., R. Co.* v.
*Hilligoss* (1908), 171 Ind. 417.

7. The demurrers, therefore, being separate, if the
paragraph exhibit a cause of action against each, the
demurrers were properly overruled.

6. It is shown that Gossett, the decedent, and Kennedy, the
Belt road's signalman, were not fellow servants; that, by
an agreement between the two defendants, the Big
Four had the right to run its trains, in charge of its
employes, over the Belt road, subject only to the right

of the latter, by its signalmen and switchmen, to direct and guide the movement of said trains; that Gossett was, at the time of his injury, in the employ of the Big Four, as a brakeman, and was in the line of duty assisting in moving a train of his employer over the tracks of the Belt road, pursuant to said agreement, and was in the exercise of due care; that as said train approached the point where the Cincinnati division of the Big Four crosses said Belt tracks, and where the Belt road maintains a semaphore signal and a switch, and also a side-track to the right of the track upon which Gosssett's train was running, Kennedy, the Belt road's employe in charge of said semaphore signal, switches and side-track, set and displayed said signal to indicate to the employes of the Big Four train that they should bring said train to a stop before reaching that signal point. The negligence of the Belt road's signalman in changing the signal while the decedent's train was still in motion, thus changing the route of said train, in violation of rule seventy-nine, is averred as in the first paragraph, as is also the negligence of the engineer of the Big Four in starting his train forward violently, in violation of rule seventy-nine, without notice or warning to Gossett, the legal effect of the averments being that the negligence of the signalman induced the negligence of the engineer, and that the two independent agencies concurred in causing the death of the decedent.

It is a familiar doctrine that when more than one person contributes to the commission of a wrong, each is fully liable for the acts of all, and for the whole damage. Courts 8. will not undertake to apportion the damage in such cases among the wrongdoers, and the injured party has the right to elect whether he will sue one or all. *Cleveland, etc., R. Co.* v. *Hilligoss, supra;* 1 Cooley, Torts (3d ed.), p. 223, and many cases collated in note 44; *Hoosier Stone Co.* v. *McCain* (1892), 133 Ind. 231, 233.

Under the agreement between the defendants, the Big

Four had the right to run its freight-trains over the tracks of the Belt road, which agreement embodied an undertaking on the part of the Belt road to assume the guidance of such trains while moving over its tracks, and to furnish all the switchmen and signalmen necessary to a proper handling of such trains. The decedent was on the Belt road, in the right of his employer, and entitled from that road to the same protection due to its own employes in like service; that is to say, to that protection and safe conduct afforded by the careful manipulation of the signals and switches. The agreement of the Belt road to furnish the signalmen and switchmen for the guidance of the Big Four trains over its tracks carried with it the implied undertaking and duty to perform the service with reasonable care, and this obligation fully extended to all employes of said company while engaged in the running of such trains. *Chicago, etc., R. Co.* v. *Vandenberg* (1905), 164 Ind. 470, 480; *Smith* v. *New York, etc., R. Co.* (1859), 19 N. Y. 127, 75 Am. Dec. 305; *Sawyer* v. *Rutland, etc., R. Co.* (1855), 27 Vt. 370; *Taylor* v. *Western Pac. R. Co.* (1873), 45 Cal. 323; 4 Thompson, Negligence (2d ed.), §5000.

It is sufficient merely to suggest that Gossett, not being a fellow servant of the Belt road's employes, did not assume the risk of their negligence.

With respect to the second paragraph of the complaint, as it relates to the Big Four, it is shown that the decedent and the engineer in charge of the train were coservants, and, under the common law, subject to the coservant rule. The operation of this rule would doubtless vitiate the second paragraph as a common-law action, but the paragraph contains sufficient averments to bring the body of facts within the operation of the statute, and it is therefore good against a demurrer.

There are no grounds for the contention of counsel for the Belt road, that the complaint is predicated on the negli-

gence of the company's switchman, and not its employe in charge of the signal; that it is not sufficiently shown that it was the train on which Gossett was employed that received the changed signal before coming to a stop, or that there was, at the place of injury, a switch leading to another or conflicting track. Neither paragraph of the complaint warrants any such conclusion.

Nor can it be successfully claimed that the alleged negligent change of the signal was not a proximate cause of the accident. It was more than a concurring cause. It was the first and moving cause. Under the allegations of the complaint, the premature change of the signal was the cause that started the mischief, by inciting and inducing the engineer to arrest the stopping of his train for the purpose and in the manner averred. *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132-136; *Southern R. Co.* v. *Sittasen* (1906), 166 Ind. 257, 266; *New Castle Bridge Co.* v. *Doty* (1907), 168 Ind. 259, 265. We think both paragraphs of the complaint are good as to each of the defendants.

The court did not err in refusing each of the defendants a peremptory instruction to the jury to return a verdict in its behalf. Such an instruction must be denied when there has been produced any substantial evidence on all material issues. *Pennsylvania Co.* v. *McCormack* (1892), 131 Ind. 250. Where there appears a conflict in the evidence, or where it is of such a character that two reasonable inferences may be drawn therefrom, it should be submitted to the jury. *Diamond Black Coal Co.* v. *Cuthbertson, supra; Annadall* v. *Union Cement, etc., Co.* (1905), 165 Ind. 110, 112; *Cincinnati, etc., R. Co.* v. *Darling* (1892), 130 Ind. 376, 380. The records disclose no paucity of evidence in support of appellee's complaint. In fact, we are not directed to any material fact that is claimed to be wholly unsupported.

The court refused to instruct the jury that the two paragraphs of complaint were inconsistent, and that in arriving at the verdict the jury should apply the evidence exclusively, either to the first, or to the second paragraph. Our attention has not been directed to any rule of pleading, under the code, nor to any decided case, that forbids a plaintiff from stating his cause of action upon kindred, but different, theories, in different paragraphs of his complaint. Both paragraphs of the complaint sound in tort and are based on the same facts. One invokes the statute, the other the common law. The paragraphs are not inconsistent. They are the result of cautious pleading, and entitle the pleader to a proper application of the evidence to either, or to both paragraphs.

The court also refused to instruct the jury, upon request of counsel for the Belt road, that the first paragraph of the complaint was not proved; also, that the second paragraph was not proved. "It was an essential element," argues counsel, "to prove the charge that Kennedy, the signalman, knew that the Big Four train had orders to fill at Norwood, and there being no evidence of that fact there should be no recovery." In this, as in many other statements, counsel are in error. Kennedy testified that he was in the employ of the Belt road, and as such employe had charge of yard, switches, signals and telegraph office at the time and at the place of the accident. The evidence further shows that when the Big Four train left Brightwood, the general telegraph operator telegraphed its orders and route, which dispatch entered every suboffice on the route, including Kennedy's, for the information of the switchmen; and so there was evidence from which the jury might infer that Kennedy did know the orders of said train, or might have known them by the exercise of reasonable diligence.

The sixth request of the Belt road was rightly refused.

There was no evidence before the jury as to the manner and custom of manipulating the signals on the Belt road during the eighteen months of Barker's employment.

The substance of request number seven was fully given by the judge in instructions of his own. The court refused to instruct the jury that rule seventy-nine applied only to interlocking systems, and had no application in this case. The ruling was proper, as the application of the rule was the controlling question in the case.

The Big Four submitted five separate and correct statements of the law relating to the assumption of risks, and requested that they be given to the jury. The court refused the request, and did not advise the jury on the subject in any instructions given. There was no error in this. No such question could arise in the case.

Under the first paragraph of the complaint the action against each of the defendants, and under the second paragraph against the Big Four, rests upon the fourth clause of section one of the employers' liability act (Acts 1893, p. 294, §8017 Burns 1908), and the negligence relied on, to wit, of a coëmploye in charge of a signal on the one part, and in charge of a locomotive engine on the other, is of a character that the statute disqualifies the servant and requires the master to assume. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607; *Bessler* v. *Laughlin* (1907), 168 Ind. 38; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664.

The question could not arise in favor of the Belt road under the second paragraph, because it is alleged that Kennedy, the signalman, and the decedent were not co-servants, but employes of different masters. The decedent, being exclusively an employe of the Big Four, did not assume a risk from the operation of the Belt road, for two reasons: (1) Because he had no contract relation (from which the doctrine of assumed risk arises) with that

company; (2) being such employe, he did not, in behalf of a stranger company, assume the risk of its employes. *Davis Coal Co.* v. *Polland, supra.*

We agree with counsel that a brakeman upon entering railroad service assumes the risk arising from the usual jerks and jars incident to the taking up of slack and other movements of trains, but the jerks and jars given without warning to a brakeman, who had received notice from competent authority, and had been led to believe that no jerks would be made at the time, are not usual and ordinary jerks, and it is not accurate to say their risk is assumed as an implied risk of the service. If, in accordance with a rule of the defendants, a signal was displayed that justified the decedent in believing, and he did believe, that the train he was on was about to stop, and would stop before it reached the signal, and that there would be no jerks or jars from a sudden forward movement of the train before it fully stopped, the positive act of thus throwing the decedent off his guard and, by a sudden and unexpected jerk of the car he was on, causing him to stumble, or miscalculate the distance to the car he was in the act of stepping to, cannot be classed as a risk assumed. Besides, it is made plain, from the evidence and instructions given to the jury, that the plaintiff was required to show that the decedent was justified in relying upon an observance of rule seventy-nine, as it applied to the stopping of his train, or she must fail in her action against both defendants.

Complaint is also made of the giving of instruction eighteen, which is, in substance, as follows: If a rule exists covering the conduct of trains under the circumstances alleged in the complaint, the violation of such a rule, under circumstances wherein it should be observed, and wherein those operating under the rule know that it should be observed, and expect it to be observed, and without notice to them that it will be violated, is not due care, but is negligence, and if such violation is the proximate

cause of injury to one in whose favor there was a duty to observe the rule, and the person so injured was himself at the time exercising due care, then the person or company violating such rule would be liable for the injury so caused. The error attributed to this instruction lies in the statement that the nonobservance of the rule under the circumstances would constitute negligence. The contention is that its violation would amount to nothing more than an evidence of negligence. A superficial view is inclined to impress one that there is much confusion in the adjudications on this point, but a closer examination of the cases reveals the fact that the apparent confusion is the result of varying circumstances of each particular case, rather than a difference of view among the courts.

There can be no ground for a discussion of the proposition that if a railroad corporation promulgates reasonable rules for the government of its employes while engaged in operating its railroad—rules which experience has shown were calculated to furnish the greatest safety, both to the employe himself, and to his fellow workmen—a servant, who becomes injured as a result of a positive and negligent violation of such rules, without pretext, or excuse, is guilty of contributory negligence.

Likewise, a corporation having issued and enforced such rules among its employes, if, while observing them, and relying upon their observance by others, an employe is injured by an inexcusable violation of such rules by the corporation itself, it goes without saying that such conduct would constitute negligence.

The mutual duty of the parties, with respect to rules, is said to arise from the broad principle that their promulgation by the company, and the entering and remaining in the service after knowledge of their provisions, implies on both sides an agreement to obey them; and their infraction by either party is therefore attended with that liability which the law imposes from the doing of an act in an unnecessarily

dangerous manner. *Louisville, etc., R. Co.* v. *Heck* (1898), 151 Ind. 292; *Pennsylvania Co.* v. *Whitcomb* (1887), 111 Ind. 212, 218.

The great weight of authority is to the effect that, when the evidence clearly shows that the injury complained of was caused by a needless violation of a valid and reasonable rule, promulgated for the protection of the class of employes to which the injured party belonged, under such circumstances as attended the accident, the court is warranted in pronouncing the act negligence as a matter of law. *Somerset, etc., R. Co.* v. *Galbraith* (1885), 109 Pa. St. 32, 39, 1 Atl. 371; *Memphis, etc., R. Co.* v. *Graham* (1891), 94 Ala. 545-552, 10 South. 283; *Lake Erie, etc., R. Co.* v. *Craig* (1897), 80 Fed. 488, 25 C. C. A. 585, 47 U. S. App. 647, 660; *Sedgwick* v. *Illinois Cent. R. Co.* (1888), 76 Iowa 340, 41 N. W. 35; *Sutherland* v. *Troy, etc., R. Co.* (1891), 125 N. Y. 737, 26 N. E. 609; *Abend* v. *Terre Haute, etc., R. Co.* (1884), 111 Ill. 202, 53 Am. Rep. 616; *Louisville, etc., R. Co.* v. *Heck, supra;* Buswell, Per. Inj. (2d ed.), §153; 1 Labatt, Master and Serv., §§365, 367.

In the last cited section the author says: "In New York and Texas, views have been expressed which are more or less at variance with the doctrine that culpability is a legal inference when the servant's act is once proved to have constituted an infraction of a valid rule of which he had notice. It can scarcely be doubted, however, that, even if the numerous authorities on the other side are left out of account, these views are erroneous. The decisive consideration which is altogether ignored in the decisions cited is that every breach of a rule represents a breach of a contractual obligation which has either been expressly assumed by the servant, or is implied from the fact of his having accepted or continued in the given employment with notice of the existence of the rule so violated. * * * The servant's agreement is that, whatever may have been, apart from the rule, the standard of proper care under the circumstances, the rule itself is to

define that standard, as between the servant and his master, as long as the former remains at work. That this is really the prevailing view even in the two states above mentioned is abundantly evident from numerous decisions in which recovery has been denied, as a matter of law, for the reason that the injury was caused by the violation of a rule.''

There are, however, a great many circumstances attending the violation of rules which modify the act and give it such character, with respect to negligence, as will make it a question for the jury. It has been held that among these circumstances and conditions are the following: If it is shown, that an observance of a rule is impossible or impracticable for want of some necessary instrumentality or other good reason; that the employe had no knowledge of the rule, either actual or constructive, or had no knowledge, either actual or imputed, that the conditions which invoked the exercise of the rule existed at the time of the accident; that a rule is ambiguous or uncertain in its application, and a *bona fide*, though erroneous, effort was made to comply with it; that there was a failure to recognize the pertinency of the rule to present conditions, such failure being consistent with a reasonable construction of the rule; that a violation is induced by some urgent emergency; that the compliance with said rule is in conflict with some other paramount duty—it should be, in all such cases, left to the jury, under proper instructions, to characterize the violation as constituting negligence or due care.

To illustrate: Where the excuse set up is that there was no time or opportunity to inspect a foreign car, a failure to inspect, being in violation of a rule, should be submitted to the jury. *Chicago, etc., R. Co.* v. *Fry* (1892), 131 Ind. 319, 330. Whether it was necessary, in violation of a rule, to go between moving cars, in order successfully to couple them, is also for the jury. *Eastman* v. *Lake Shore, etc., R. Co.* (1894), 101 Mich. 597, 60 N. W. 309.

Likewise, where a rule simply forbids the coupling of cars while moving at a dangerous rate of speed, it is for the jury to say whether, under the facts, the rule was violated. *Denver, etc., R. Co.* v. *Smock* (1897), 23 Colo. 456, 48 Pac. 681.

In the case of *Somerset, etc., R. Co.* v. *Galbraith, supra,* the rules of the company required a freight conductor to take his place about the middle of his train, in long, down-grade movements, better to direct the brakemen.    In a down-grade movement the conductor left the position assigned him by the rules and went forward to the engine to caution the engineer to be on the lookout for certain obstructions that the conductor had been informed were liable to be on the track ahead.    While at the engine, the same left the track, whereby the conductor was killed.    In relation to which the court said:  ''He had, it is true, certain orders from the company under the general regulations, one of which was, that he should remain in the middle of the train, to command the crew, in regulating the speed on descending grades.  He was held, of course, to the reasonable observance of all these rules, but he had a general duty and discretion to exercise in an emergency.  His duty varied according to the circumstances.    Unless some exigency calls him away he must remain at his post, whilst the train is on a descending grade, but he must necessarily be allowed some latitude in the exercise of judgment for the safety of his train.''    Applying these principles to instruction eighteen, we find no objection to it.    In effect, it admonished the jurors that if they found there existed a rule governing a train running west on the Belt road, when the track upon which the train was running should be found obstructed, and it became necessary to reroute said train;  and if they further found such rule was violated—that is, that the re-routing signal, required by rule seventy-nine, applied to the decedent's train, and was not properly given, under the circumstances, when it should have been given, and there was no excuse for the failure to give

Cleveland, etc., R. Co. *v.* Gossett—172 Ind. 525.

it—it was not due care, but negligence, to disregard the rule, without first giving warning to those operating under it, and relying upon its observance. This seems clearly within the accepted rules of the law.

The correctness of instruction nineteen is also challenged. The court first called attention to the allegations of the complaint, relative to rule seventy-nine, and that the violation complained of consisted in removing a stop signal before the engine attached to the train in controversy had, in response to said signal, come to a full stop. The instruction, in substance, then proceeds: Defendants contend that this rule has no application to the situation described in evidence in this case and referred to in the complaint, because, as defendants assert, this rule applies only to interlocking signals, and not to signals which are not interlockers, and that the signal alleged by plaintiff to have been changed from a stop signal to a proceed signal was not an interlocker and not governed by said rule, and that the language used in said rule has a certain and definite meaning to those engaged in controlling and directing and working upon trains, including decedent, and that such meaning is that it applies to interlockers only. On the other hand plaintiff claims that said rule applies to all stop signals, whether interlockers or not, and that the language used in said rule has a certain definite meaning to those engaged in controlling and directing and working upon trains, including decedent, and that such meaning is that it applied to stop signals like that described in the complaint. Because of this difference as to the meaning of the wording of said rule, certain evidence has been introduced to explain the meaning of such wording, and to enable you to determine the meaning and application of said rule as understood by those operating under it. You must bear in mind that this evidence as to the meaning and application of this rule was admitted, not for the purpose of

changing said rule or making it mean other than it states, but solely for the purpose of enabling you to understand in what sense the language of said rule was used; in other words, to enable you, in so far as may be properly done, to understand the rule just as the same was understood by the railroad men affected and governed by the same, and to apply the same as it was understood by said railroad men that the same should be applied, and, so far as this is concerned, after you have thus determined the proper meaning and application of said rule, you should, in considering the other questions involved, apply said rule, according to its true meaning as so determined.

The contention of counsel is that, the rule being a written instrument, it was the province of the court, and not of the jury, to interpret it. We readily concede the general rule to be as affirmed by counsel, but there are exceptions as well founded as the rule itself.

The exception applicable here is well stated by Woods, J., in *Reissner* v. *Oxley* (1881), 80 Ind. 580, in these words: "The right of parties to put an interpretation upon their own contracts, even to the extent of doing away, practically, with the ordinary and plain meaning of terms, cannot well be denied, so long as their interpretation does not result in a contract which for some reason is in itself unlawful. And the cases are numerous and consistent, which permit a resort to proof of the circumstances or situation of the parties, when their contract was made, and of their transactions under it, when its terms are of doubtful or ambiguous meaning, for the purpose of arriving at the true intention, and, when this is done, the question must be left to the decision of the jury substantially as was done in this instance."

It has repeatedly been held by this court that in cases where the writing is indefinite, or the language ambiguous, or of doubtful application, the practical interpretation given it by the parties themselves may be shown by parole, and that the construction and application

given by them should be received with great, if not controlling, weight. *Gaylord* v. *City of LaFayette* (1888), 115 Ind. 423; *Ralya* v. *Atkins & Co.* (1901), 157 Ind. 331; *Burke* v. *Mead* (1902), 159 Ind. 252; *Ditchey* v. *Lee* (1906), 167 Ind. 267.

As indicated by the instruction, one of the chief contentions in the case was whether rule seventy-nine applied exclusively to trains governed by the interlocking system, or generally to all trains that must be re-routed while passing over the Belt road. It was really the controlling question in the case. If rule seventy-nine did not apply to the signal directing the movements of decedent's train, then there is nothing to show that it was improper for the signalman to change the signal from a stop signal to a proceed signal before the train came to a stop, or that it was improper for the engineer, upon the receipt of a proceed signal, to quicken the speed of his train, and go into a side-track, without first coming to a stop, in which event there would be no negligence shown against either defendant.

The rule is general in its terms. There are no words nor reasonable inferences that limit it to interlocking systems, and without parol evidence as to how the rule was applied by those who promulgated it, and operated under it, the court and jury were powerless to determine the merits of the case. The record shows that the necessity of resorting to parol evidence was first recognized by the defendants, who introduced the controversy by inquiring, on cross-examination of plaintiff's witness, and over the plaintiff's objection. And thereafter such evidence was freely given by both parties. The evidence being before the jurors, it was the duty of the court to instruct them concerning it. Besides, if it could be said to be error, it was invited by the defendants, and would not be available to them. The court did not err in giving instruction nineteen.

The evidence relating to the physical facts—to the habitual violation of rule seventy-nine, to the practical observance of

said rule by those operating the railroad, and to all other material questions of fact—was conflicting, and we have no authority to disturb the conclusions of the jury by a reconsideration of the evidence.

The answers to the interrogatories were not in conflict with the general verdict, under the oft-repeated rule in this State, and the court did not err in denying judgment thereon in favor of the defendants.

There are divers other questions, arising upon instructions requested and given, and the giving and refusing of testimony, which we think have been fully decided by what has already been said in this opinion.

No error appearing, the judgment is affirmed.