# SECOND DISTRICT, 1901.

GULF, COLORADO & SANTA FE RAILWAY COMPANY v.
J. E. KNOX AND WIFE.

Decided March 2, 1901.

**1.—Negligence—Railway Brakeman—Low Bridge—Warning—Charge.**

An instruction to the effect that if deceased, a brakeman in defendant's employ, was advised by the book of rules furnished him at the time he was employed that it was dangerous to stand erect on the top of cars while passing through a certain bridge, he assumed the risk of injury, and if killed by reason of so doing, his parents could not recover, was properly refused, because ·it took from the jury the issue as to whether such warning was adequate.

**2.—Same.**

It being negligence for the railway company to construct bridges dangerous to the lives of its employes, and provide no contrivances to give warning of them to brakemen on approaching trains, it can not excuse itself by simply showing that the brakeman knew, before receiving the injury, that the bridge was so low he could not pass it with safety while standing on top of the cars.

Appeal from Tarrant. Tried below before Hon. Irby Dunklin.

*J. W. Terry,* for appellant.

*Carlock & Gillespie,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by the father and mother to recover from the railroad company damages occasioned by the death of their minor son, Alvin Knox, a brakeman in appellant's employ who was killed on December 26, 1899, by a crossbeam on the north end of appellant's steel bridge across the Trinity River at Fort Worth, while walking back to the rear end of the train on top of a furniture car. There was a verdict and judgment for the appellees of $1000, apportioned equally between the father and mother, and from this judgment the company has appealed.

The evidence was sufficient to establish that the son was a minor, about 20 years old, of ordinary intelligence; that he had been in the employ of the company as call boy at Cleburne, and upon his own application made to the company on August 17, 1899, stating that he was over 21 years old, had been employed as a brakeman on a freight train, his run being from Cleburne, Texas, to Purcell, I. T.; that he had made seven or eight round trips over the portion of the road named, thus having passed through and over the bridge on which he was killed some fourteen or fifteen times; that in the printed application for the posi-

tion of brakeman he was made to sign a statement that he understood that every employe of said company whose duties were in any way prescribed by the rules must always have a copy of the rules at hand when on duty, must be conversant with every rule, must render all assistance in his power in carrying them out, and agreed that such rules, including any changes or additions thereto, should be a part of his contract of employment; that he understood that at some points on the line there were platforms, sheds, roofs, water-tank frames, telegraph poles, bridges, and other obstructions which may be dangerous, and that he must inform himself of such obstructions and use due care to avoid injury thereby; that he understood that it is dangerous to stand erect upon cars, and especially cars of extraordinary height, while passing over, through, or under bridges or viaducts, trolley wires or other overhead structures as shown under warnings on time cards at which are no telltales or other warnings, and that necessary caution must be used by all employes to protect themselves from injury from all overhead structures at said points while riding on top of cars. That he was furnished with a printed time card and rules which contained the following: "All employes are expected to protect themselves from personal injury by avoiding risks. Those who may receive injuries on account of taking risks will have no claim on the company.

"Warnings.—All employes are hereby notified that it is dangerous to stand erect upon cars, and especially cars of extraordinary height, where passing over, through, or under the following named bridges or viaducts, and necessary precaution must be used by all employes to protect themselves from injury from overhead structures at said points while riding on top of cars."

Here follows a list of bridges, twenty-eight being on the main line, and in this list is "Bridge No. C 217, between milepost 348 and 349, name Trinity River."

Said bridge No. C 217 is the bridge where Knox was killed. The defendant company has no telltales or whiplashes or anything of that sort in use for the purpose of warning employes of the approach to these bridges.

It further appears from the evidence that all the crossbeams of the bridge in question were 20 feet and 6 inches above the rails, except this one at the north end of the bridge, which was 12 inches lower than the others. It does not appear that Alvin Knox had ever been informed of this fact. At the time he was killed he was walking erect on a furniture car back to his position on the caboose—said car was about three feet higher than an ordinary car—when the back of his head struck the said low beam, and his skull was crushed, from which injury he died about twelve hours later. The said beam at the north end of the bridge being a foot lower than the others, and only 19 feet and 6 inches above the rails, made the bridge a dangerous structure for brakemen to pass through, standing or walking on the tops of cars, especially tall cars, and one calculated to deceive them and thus cause them to receive unexpected injuries. For this reason the bridge seems to have been negli-

gently constructed, and constituted a dangerous menace to life, and a trap in which appellant's brakemen are liable at all times to loose their lives in passing through it, especially as no "telltales" or "whiplashes" have been erected to warn them of their near approach to the bridge.

There are but two assignments of error, both complaining of the court's action in refusing to give special charges asked. One of the charges was a peremptory one to find for the defendant; the other was as follows:

"If you believe from the evidence in this case that Alvin Knox, son of plaintiffs, on the 17th day of August, 1899, made a written or printed or partly written and partly printed application to the defendant for employment by it as a brakeman on its railroad, and that said application was signed and executed by him, and if you further believe from the evidence that there is on said application a written or printed statement signed by the said Alvin Knox by the name of A. Knox, in which statement the said Alvin Knox acknowledges the receipt of a copy of the current timetable and book of rules and regulations for the information and government of employes of defendant, and that he, the said Alvin Knox, carefully read and understood the same, and if you further believe from the evidence that rule 159 in said current time table and book of rules and regulations states that all employes are notified that it is dangerous to stand erect upon cars of defendant, and especially cars of extraordinary height, while passing over or under certain bridges and viaducts named in said rule, and that the bridge of defendant over Trinity River, where Alvin Knox was killed, is mentioned in said rule, and if you further believe that said rule requires all employes of defendant to use all necessary precautions to protect themselves from injury from overhead structures at said points named in said rules, while riding on the top of cars of defendant, and if you further believe from the evidence that Alvin Knox, while passing over the said Trinity River bridge on the top of a car of defendant of either ordinary or extraordinary height, stood or walked erect, and if you believe that said Alvin Knox was then and there killed while so passing said Trinity River bridge, and if you further believe from the evidence that the proximate cause of the death of said Alvin Knox was the result of his so standing or walking erect while so passing over said bridge, and if you further believe from the evidence that the bridge over the said Trinity River was constructed and being used by the defendant when the said Alvin Knox was employed by it, and was in the same condition as to height that it was at the time the said Alvin Knox was killed, and that the risk or danger of going over the same with the cars of defendant had not been increased during the time the said Alvin Knox was employed by the defendant, then you are instructed that the risk or danger, if any, which the said Alvin Knox incurred when he was killed, was assumed by him, and he can not recover in this case, and you will find for the defendant, and so say by your verdict."

Counsel's third proposition under this requested charge raises the

only important question in the case, and that proposition is as follows: "Having been advised in writing that it was dangerous to stand under the bridge in question on any cars, and especially on cars of unusual height, and having been also advised that there were no telltales or other warnings at said bridge, Alvin Knox, by accepting and continuing in the employment as a brakeman, as a matter of law, assumed the risk of injury from any such bridge, and, as a matter of law, was guilty of contributory negligence."

Judge Redfield, of the Supreme Court of Vermont, once said in an opinion delivered by him, that "a great lawyer is master of his case, and presents in an appellate court but few points, and those only upon which his case turns." The able counsel of appellant in this case show themselves to be great lawyers, according to Judge Redfield's rule, for they only present, in effect, but one assignment of error, and raise substantially but one point, and that is the one upon which the case turns.

The proposition of appellant is that if Alvin Knox was advised by the book of rules that it was dangerous to stand erect on the top of the cars while passing through this bridge, he assumed the risk of injury, and if killed by reason thereof the parents could not recover. This assumes that the delivery to a brakeman, when he is first employed by the company, of a printed book of rules notifying him that the bridges *may* be dangerous, or *are* dangerous, to pass under standing erect, is sufficient warning for the balance of his life to place the risk on him of injury, if he should under any stress of circumstances, forget the warning and be injured by the dangerous structure. It takes the issue from the jury as to whether such warning was adequate. Many railroad men testify in this case that the best way known of preventing injury to brakemen by low overhanging bridges is to erect "telltales" or "whiplashes," as they call them, overhead across the road near the dangerous bridge, so that the man standing or walking on the top of a car coming in contact with the suspended ropes or strips of leather or wires will be warned at the very instant the danger becomes imminent, and can stoop or sit down until the bridge is passed. It is said to be a cheap contrivance, quite effectual, and in use on many of the best and modern equipped railroads. The special charge and the proposition ignore these features raised by the evidence in this case, and hence, for this reason, was properly refused.

Mr. Beach, in his work on Contributory Negligence, speaking of these low bridges, says: "The duty of freight train men requires them, or some of them, to be upon the top of the cars much of the time the train is in motion; they must stand erect and go rapidly from one car to another in the night as well as in the daytime. If the roof or over-structure of the bridge is so low that it will strike a brakeman standing erect upon the top of his train, it is essentially a murderous contrivance, and it is not creditable to our jurisprudence that such buildings are not declared a nuisance. There is nothing in the reports worse than the cases that sustain the corporations in building and maintaining these

mantraps." 2 ed., sec. 63; Shearm. & Redf. on Neg., 4 ed., sec. 198, et seq.; Railway v. Cooley's Admr., 49 S. W. Rep., 340. In Cooley's case, supra, Justice Paynter, speaking for the Court of Appeals for Kentucky, said: "It was a constant peril to the lives of its employes whose duties called them on top of trains. When a brakeman's life is lost in consequence of such negligence, the company can not excuse itself by simply showing that he knew, before receiving the injury, the bridge was so low that he could not pass over it with safety while standing on top of the cars. Exigencies or other causes may arise in the discharge of his duties which may cause him to forget the danger with which he is threatened, and thus cause his failure to avoid injury. * * * If he failed to measure the exact distance between the top of the car and bridge with his eye, or did so, but failed, after reasonable effort, to get his body in exact position to avoid a collision with the bridge, it seems to us that the appellant should suffer the loss, and not the intestate's estate." Railway v. Duvall, 54 S. W. Rep., 741; Railway v. Kime, 21 Texas Civ. App., 271.

Finding no error in the judgment, it is affirmed.

*Affirmed.*

Writ of error refused.