The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN and McLAUGHLIN. JJ.. concur.

INGRAHAM, J. (dissenting). I agree with Mr. Justice HATCH as to the legal rules applicable to the determination of this question, but dissent from his conclusion that the language of the instrument of guaranty gives rise to the inference that the consideration for its execution was an agreement to forbear the enforcement of the notes for a reasonable time. In the first place, there was no proof of such an agreement. When this guaranty was given, the notes were due, and the plaintiff could have proceeded against those liable upon them to collect the amount due. Himmelrich, to whom the letter guarantying the payments of the notes was written, was the president of the plaintiff, and it seems to have been the object of the defendant's intestate to protect him from blame because he, as president of the bank, had discounted these notes. There had been an understanding between Leary, the defendant's intestate, and Himmelrich, that each was to pay one-half of these notes to the bank; but I can find no evidence to justify a finding that there was any agreement between the plaintiff and either Leary or Himmelrich to suspend the right to enforce these notes, or that the plaintiff did suspend the collection of the notes upon this promise. By this instrument of guaranty, Leary agreed that he would be responsible for the debt of another, which was then due and payable to the plaintiff. There was no proposal in the letter of guaranty that the bank should suspend the collection of the notes which were accepted by the bank,—nothing but the naked promise to pay the notes within a reasonable time; and if there is any force in the rule, which I understand is conceded to be established in this state, that an instrument of guaranty must contain, either expressly or inferentially, a consideration, it seems to me that this instrument fails to comply with the statute, and is void.

I think the judgment should be affirmed.

---

(77 App. Div. 284.)

### CLARK v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. December 12, 1902.)

1. MASTER—VIOLATION OF RULES BY SERVANTS—CONSTRUCTIVE NOTICE.

    The rules of an elevated railroad company required its trains to slow up when a green flag was exposed, and it appeared that it was usual to put up such flags for the protection of workmen. In an action for the wrongful death of a track repairer by reason of an engineer's failure to slow up in response to a green flag, a co-employé of the decedent, in answer to the question as to whether the speed of the cars would decrease any when a green flag was exposed, stated, "They didn't seem to mind the flag at all," and also testified that this was an everyday occurrence prior to the accident. *Held* not to show such a general violation of the rule as to charge the company with constructive notice thereof.

2. SAME—SERVANT—DANGEROUS PLACE FOR WORK—CARE REQUIRED OF MASTER.
    Where, in an action for the death of an employé, the court submitted
    only the question as to the negligence of the defendant railroad com-
    pany in failing to enforce its rules after notice of their general violation,
    and the evidence was insufficient to prove such notice, the judgment for
    plaintiff cannot be supported on the theory of other negligence on the
    part of the defendant railroad company, where such theory was not
    submitted to the jury nor was defendant heard thereon.

Appeal from trial term, New York county.

Action by Mary Clark, as administratrix, against the Manhattan
Railway Company. From a judgment entered on a verdict for
plaintiff, and from an order denying defendant's motion to set aside
the verdict and grant a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-
LIN, O'BRIEN, and INGRAHAM, JJ.

Frederick A. Ward, for appellant.
Edward J. McCrossin, for respondent.

HATCH, J. This action was brought to recover damages for
claimed negligent conduct upon the part of the defendant, resulting
in the death of the plaintiff's intestate. It appeared upon the trial
that the decedent was an employé of the defendant, and upon the
26th day of November, 1901, was engaged as a track repairer, re-
pairing tracks upon the defendant's structure between Fifty-First
and Fifty-Second streets. The work in its performance required
the deceased to lean over the rails, with his head down between
the ties, and drive up bolts into a guard rail, which was bolted
down from the top. While in this position an elevated train run-
ning at a high rate of speed struck the deceased, and inflicted in-
juries from which he died. The theory of the complaint charges
the defendant with negligence in failing to provide proper rules and
regulations relative to the operation of trains over that part of
the structure whereon its employés were working, and in omitting
to warn the deceased of the approach of the oncoming trains, and
for failure to provide any flag, signals, or warning to notify the
engineer upon the train of the presence of workmen. Upon the
trial, proof was given upon the part of the plaintiff tending to es-
tablish that no flag had been provided to warn the engineers op-
erating the trains of the presence of workmen upon the track, and
that in the course of the employment it was customary, when an
employé was engaged in the performance of the work which the
deceased was then doing, to station another person near him to
give warning of approaching trains; that in the present case the
foreman of the gang in which the deceased was employed stood by
the deceased when he commenced to work, but left him in such
position before he had finished, and went to another point upon
the road, a considerable distance to the north; and that at the
time when the injuries were inflicted there was nobody sufficiently
near to the deceased to give him warning of the approaching train.
Some further testimony was given, tending to show that the en-
gineers, in the operation of their trains, habitually disregarded the

flags, which were placed to warn them of the presence of workmen upon the track. The effect of this testimony will be hereafter noticed.

Upon the part of the defendant, the proof tended to establish that it had formulated and promulgated rules, sufficient in themselves, if properly observed, to protect the workmen from danger while so employed, and of such rules the gang with which the deceased worked was informed; that sufficient flags and other implements to give warning were also furnished. Proof was also given tending to show that, upon the day in question, a green flag was put up at a proper place when the gang began to work, and remained up at the time of the happening of the accident. The rules required that engineers in the operation of trains should come to a full stop when a red flag was exposed, and slow up when a green flag was exposed; that it was usual for the protection of the workmen to put up a green flag. The foreman testified that he went with the deceased to the place where he was killed, and remained with him for some time, when his duties called him elsewhere, and that he then informed the deceased that he was going to leave and that he would have to look out for himself. This was a short time prior to the happening of the accident.

The case was submitted to the jury upon the theory that liability of the defendant could only be based upon a persistent and continued violation of the rules which required observance by the engineers engaged in operating trains of the green flags. The court held that proper rules had been formulated and promulgated, and that liability could not be predicated against the defendant for negligence in this regard. Such was the rule announced by the court in denying a motion for a nonsuit, and several times reiterated in the court's charge to the jury. The case came to rest, therefore, solely and exclusively upon the fact that the jury might predicate negligence of the defendant based upon a lack of proper care in seeing that the system of rules which it had formulated and promulgated was properly observed by the agents and servants of the company. The case must, therefore, be supported upon this theory of negligence, or not at all. The only evidence in the case bearing upon this subject is found in the statement of the witness Cosgrove, developed as follows:

"Q. When this green flag was set up what would happen, so far as any of the trains were concerned, with regard to obeying this flag? (Defendant's counsel objected to the question as incompetent and immaterial. The court overruled the objection, and defendant's counsel duly excepted.) A. I don't understand. Q. Would the speed of the cars decrease any? A. They didn't seem to mind the flag at all. Q. Didn't mind the flag at all? A. Not that flag. Q. Was this an everyday occurrence previous to this accident? (Objected to by defendant's counsel as incompetent.) The Court: I suppose these gentlemen are going to claim that this man had a right to rely upon some warning. Mr. Towns: Yes, and show also that if they had had any rules they never were observed. (The court overruled the objection, and defendant's counsel duly excepted.) A. Yes; every day."

The effect of this testimony is somewhat obscure, as the first statement of the witness is that the engineers in the operation of the

trains did not mind that flag. If by this answer the witness is to be understood as applying failure to observe the flag to the engineers operating trains on the day of the accident, and limited to the flag then in position, it is clearly insufficient, as no liability could by any possibility attach to the defendant for the negligence of its servants in failing to obey this particular flag at the particular time. A single instance of neglect, or the neglect to observe the flag for a day, would be insufficient upon which to predicate negligence for failure to correct an habitual neglect of rules by its servants, even though it had direct notice of such fact. Assuming, however, that the testimony of the witness is to be construed as applying generally to all cases when green flags were displayed, and that they were habitually disregarded, we think the proof is insufficient upon which to base a charge of negligence. The witness was a co-employé of the deceased, of the same grade, and was not vested with any authority in regulating or controlling the actions of other servants of the defendant. Consequently, notice to him would not be notice to the company. The proof is entirely silent as to the length of time during which this flag had been disregarded. The disregard of it for a month or a day would be entirely consistent with the statement of the witness, and it does not appear under what circumstances it was done, or whether by particular engineers, or at all. The statement is extremely general in character, and is not sufficient from which it can be seen, or from which an inference can be raised, that the defendant was required to take action thereon. It is not established by this evidence, nor was it otherwise claimed, that notice of the failure to observe this rule was given to any officer or representative of the company having authority to discharge or regulate the conduct of its servants and employés in respect thereto. As no direct notice was given to any such officer or representative, the case must be brought within the rule authorizing the jury to find constructive notice to the defendant of the habitual disregard of the rule. Upon this subject the proof entirely fails, as length of time during which the flag had not been observed cannot be determined from anything appearing in the proofs in the case. In Cameron v. Railroad Co., 145 N. Y. 400, 40 N. E. 1, it appeared that the servant charged with neglect had, for a period of four months prior to the accident, been accustomed to habitually violate the defendant's rules by leaving a switch open and unguarded; and it was held in that case that it was insufficient to charge constructive notice upon the master. It is there said:

"There is no arbitrary rule of law that charges the master with constructive notice of the negligent omission of duty on the part of a co-servant, after the lapse of a certain time, under all circumstances. The doctrine of constructive notice is founded upon reasonable and just considerations, and the mere lapse of time is not always a test of negligence on the part of the master."

It is evident that, under the doctrine of that case, the jury were not authorized to find that the defendant had constructive notice of the neglect of its employés in the present case. There is an utter absence of anything in this case showing, or tending to show,

that prior to the time of the accident the officers or representatives of the road had knowledge of the neglect of its servants in this particular. There was no direct notice of the existence of any physical condition of which the defendant ought to have taken notice, or of any other circumstances which, in the discharge of its duty, would or should have called it to its attention. It does not appear that any other accidents of this character had ever happened from this cause, or that there existed any other circumstances from which it could be inferred that the officers and representatives ought, in the proper discharge of their duty, to have discovered it, and therefore have taken notice. The evidence was utterly insufficient for the court to submit, or the jury to find, negligence based upon the theory upon which the case was submitted to them.

It is said that the defendant was guilty of negligence in failing to station a workman near the deceased to inform him of approaching trains. It is quite clear from the testimony that great care was required to be exercised by the defendant for the protection of the deceased. His employment was one of extreme danger from oncoming trains. To perform the services required of him, caused him to occupy such a position as rendered it practically impossible to inform himself of the approach of a train, and under such circumstances the defendant was charged with extreme care to see that he was properly protected. It may be that negligence could be predicated of the failure of the defendant to station a person near him to give warning during the time he was so employed, and that the foreman was guilty of an act of negligence in not remaining near him during the entire time he was so engaged, and, if called upon to leave, in not procuring some other person to take his place. The difficulty, however, with this contention is that the defendant has not been heard by the jury upon such question. The court eliminated all such considerations from the case, and presumably they were not discussed by counsel; therefore this question has not been considered by them. When the court ruled that the jury could only find negligence based upon one consideration, it necessarily eliminated all others, and the plaintiff under such circumstances cannot be heard to urge that the judgment be sustained, based upon other matters which have never been submitted to the jury and upon which the defendant has not been heard. It follows that the evidence was insufficient to support a recovery upon the theory upon which the case was submitted to the jury.

The judgment and order should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.