## CHICAGO AND ERIE RAILROAD COMPANY *v.* HAMERICK, ADMINISTRATOR.

[No. 6,980.   Filed November 28, 1911.   Rehearing denied May 17, 1912.]

1. PLEADING.—*Complaint.*—*Statutory Action.*—Where a pleader seeks to state a cause of action under the statute, facts must be averred which bring the case within the provisions of the statute. p. 433.

2. MASTER AND SERVANT.—*Railroads.*—*Negligence.*—*Complaint.*—*Allegations.*—"*Signal*".—In an action against a railroad company for the death of an employe, an allegation of the complaint that the decedent was given "a signal calling him on down main track", was not the statement of a conclusion, but such expression and others of similar import, when used in railroad business having to do with the operation of trains, are statements of fact. p. 433.

3. MASTER AND SERVANT.—*Railroads.*—*Negligence.*—*Complaint.*—*Sufficiency.*—In an action against a railroad company for the death of an employe, where the complaint averred that the decedent was an engineer in charge of one of defendant's trains

and was approaching a station under orders to meet another train at that point, that he checked the speed of his engine preparatory to taking the siding when he received from the operator of defendant's block system a "signal calling him on down main track", which he answered by sounding his whistle and then proceeded down the main track to the front of the station where the collision occurred, resulting in his death, it was not insufficient as against a demurrer for failure to aver additional facts in regard to the alleged signal, but was open to a motion to make more specific. p. 434.

4.  MASTER AND SERVANT.—*Railroads.—Negligence.—Complaint.— Allegations.—"Duty".*—In a complaint against a railroad company for the death of an engineer in charge of defendant's train, caused by a collision resulting from the failure of a block signal operator to give proper signals, the allegations "that it was the duty and business" of the operator to give proper signals, and that it was "the duty and business" of the decedent to obey the signals so given, were averments of ultimate facts and not mere conclusions of the pleader. p. 434.

5.  PLEADING.—*Conclusions.—"Duty".*—Although the use of the word "duty" in a general statement charging that it is one's duty to do, or to refrain from doing, a certain act or thing, intending thereby to charge that by reason of contractual relations, or by implication of law, one is obligated to do or not to do the particular thing averred, would render such averment the statement of a conclusion, there are cases in which the word may be used in a pleading to designate the character of work to be done, or the act to be performed, in pursuance of an employment, and when so used the allegation is not a conclusion, but one of ultimate fact. p. 434.

6.  MASTER AND SERVANT.—*Railroads.—Negligence.—Complaint.— Sufficiency.*—A complaint in an action for the death of a railroad engineer in a collision with a standing train at a station, which shows a fully equipped telegraph office and block signal system at the station with an employe in charge, whose business it was to give signals, and which alleged that plaintiff's decedent approached the station under orders to meet a train there, that he checked the speed of his engine preparatory to taking the siding, when he received from the operator a signal calling him to come down the main track, that it was the duty and business of such operator to give proper signals, and of the decedent to obey the same, that decedent proceeded down the main track and his train collided with a train standing at the station, thereby causing his death, sufficiently complied with §343 Burns 1908, §338 R. S. 1881, requiring the facts to be stated in plain and concise language, and stated a cause of action under the fourth clause of

section one of the employers' liability act (§8017 Burns 1908, Acts 1893 p. 294). p. 435.

7. APPEAL.—*Review.—Verdict.—Answers to Interrogatories.*—A general verdict finds every issuable fact in favor of the prevailing party, and on appeal the court cannot, in passing on a motion for judgment on the answers to interrogatories, consider the evidence, but must look solely to the general verdict, the interrogatories and answers, and to the facts provable under the issues. p. 439.

8. MASTER AND SERVANT.—*Railroads.—Negligence.—Abrogation of Rules.—Evidence.*—In an action against a railroad company for the death of an engineer in a collision, where the complaint alleged that the decedent was under orders to take a siding and when preparing to take the siding he received a signal from defendant's operator to take the main track, and that it was the duty of the operator to give proper signals and of the decedent to obey same, evidence that, by long usage and custom a rule was established and acquiesced in by defendant and its employes, permitting an engineer to obey such signal notwithstanding the company's printed rules or previous orders to the contrary known to him, was admissible to show an abrogation of the printed rules. p. 440.

9. MASTER AND SERVANT.—*Railroads.—Negligence.—Verdict.—Answers to Interrogatories.*—In an action for the death of a railroad engineer in a collision, where the decedent had complied with a signal to proceed down the main track instead of complying with a previous order to take the siding, answers to interrogatories which showed that rules of the company known to the decedent required him to take the siding, were not in conflict with the general verdict, where, under the issues, evidence of a custom to obey such signals and of the abrogation of the rules was admissible. p. 440.

10. APPEAL.—*Review.—Verdict.—Sufficiency of the Evidence.*—The court will not weigh the evidence on appeal, and where there is evidence tending to prove all the facts essential to a recovery, the verdict will not be disturbed for insufficiency of the evidence. p. 440.

11. MASTER AND SERVANT.—*Railroads.—Regulation of Employment. —Duty to Adopt Rules.*—It is the duty of a railroad company to adopt and promulgate reasonable rules for the running of its trains and the safety of its employes. p. 441.

12. MASTER AND SERVANT.—*Railroads.—Duty of Employe to Obey Rules.—Contributory Negligence.*—Where they are brought to his notice, it is the duty of a railroad employe to obey the reasonable rules promulgated by the company for the safety of employes, and if he violates any such rule, and is injured as a proximate

Chicago, etc., R. Co. *v.* Hamerick—50 Ind. App. 425.

result thereof, he is guilty of contributory negligence and cannot recover, unless there are facts relieving him from the duty of strict obedience, or unless the rule has been abrogated.   p. 441.

13.   MASTER AND SERVANT.—*Injury to Servant.—Violation of Rules of Employment.—Abrogation of Rules.—Negligence.*—Where an employer knowingly permits his rules established to promote the safety of his employes to be habitually violated by them, such rules will be deemed to have been abrogated by his consent, and he will not be permitted to set up a violation of any such rule as contributory negligence to preclude a recovery for an injury to or the death of an employe.   p. 441.

14.   APPEAL.—*Review.—Verdict.—Sufficiency of Evidence.*—In passing on error assigned in overruling a motion for a new trial on the ground of insufficient evidence to sustain a verdict for plaintiff, in an action against a railroad company for the death of an engineer in a collision, where the evidence showed that the decedent violated the printed rules of the company in obeying a signal to proceed down the main track, instead of complying with a previous order to take the siding, the court, under the issue tendered by a complaint alleging that it was the duty of the decedent to obey such signal, must ascertain whether there was some evidence from which the jury may rightfully have found the existence of a custom to thus violate such printed rules so as to operate as an abrogation of the same.   p. 444.

15.   APPEAL.—*Review.—Verdict.—Sufficiency of Evidence Must be Determined from Record.*—Where error is assigned in overruling a motion for a new trial on the insufficiency of the evidence to sustain a verdict, the question whether there was evidence to warrant the jury's finding must be determined from the record alone, and the question of what evidence was admissible under the issues cannot be considered.   p. 444.

16.   MASTER AND SERVANT.—*Railroads.—Contributory Negligence.— Question for Jury.*—In an action for the death of a railroad engineer in a. collision with a train standing at a station, where the decedent had proceeded down the main track with his train instead of complying with the printed rules of the company under an order to take the siding, and there was evidence to show that he proceeded down the main track in obedience to a signal given by the operator of defendant's block-signal system, and tending to show that it was the usual custom on defendant's road, when such signal was given a train approaching under orders to take the siding, not to go in on the switch, but to proceed on down the main track to the station for orders, and that such custom was known to and acquiesced in by defendant, it was for the jury to determine whether decedent was guilty of contributory negligence.   pp. 445, 447.

17. NEGLIGENCE.—*Contributory Negligence.—Question of Law.—* Where the evidence as to contributory negligence is undisputed, the question is one of law for the court. p. 446.

18. TRIAL.—*Evidence.—Inferences from Facts Proved.—Consideration by Jury.*—The jury has a right to consider all the evidence, and determine its weight as applied to any issuable fact in the case, and also to consider what may be reasonably inferred from what is thus proved. p. 447.

19. NEGLIGENCE.—*Contributory Negligence.—Conflicting Evidence.— Question for Jury.*—Where there is any conflict in the evidence given on a trial on the subject of contributory negligence, the decision of the issue should be submitted to the jury. p. 447.

20. APPEAL.—*Review.—Verdict.—Evidence.*—Where there was some evidence to warrant a jury in finding that there was no contributory negligence, a verdict for plaintiff will not be disturbed. p. 447.

21. TRIAL.—*Instructions.—Refusal.—Instructions Covering Those Refused.*—It is not error to refuse requested instructions where they are covered by the instructions given. p. 448.

22. APPEAL.—*Review.—Harmless Error.—Instructions.—Refusal.—* In an action for the death of a railroad engineer, where the complaint charged negligence in the giving of a signal by the operator of defendant's block system, the refusal of an instruction that if the alleged signal was given by order of the train dispatcher there could be no recovery was harmless where the jury's answer to an interrogatory showed that the signal was not given by order of the train dispatcher. p. 448.

23. TRIAL. — *Instructions. — Incomplete Instruction. — Failure to Tender Complete Instruction.—Waiver of Error.*—Error in giving an incomplete instruction, which states the law correctly as far as it goes, is waived by failure to tender a more complete instruction on the subject. p. 448.

24. APPEAL.—*Review.—Verdict.—Harmless Error.—Incomplete Instruction.*—The giving of an incomplete instruction on the measure of damages is harmless error where the size of the verdict was warranted by the facts shown. p. 449.

25. APPEAL.—*Review.—Harmless Error.*—Where it is apparent from the record that appellant was not harmed by the admission or the exclusion of certain evidence, questions presented thereon will not be considered. p. 449.

From Wells Circuit Court; *Charles E. Sturgis,* Judge.

Action by Davis P. Hamerick, as administrator of the estate of William E. McCalley, deceased, against the Chicago and Erie Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*W. O. Johnson, Arthur H. Jones* and *Ulric Z. Wiley,* for appellant.

*C. W. Watkins* and *E. O. King,* for appellee.

FELT, C. J.—Davis P. Hamerick, as administrator of the estate of William E. McCalley, deceased, brought this action against appellant to recover damages for the death of said decedent alleged to have been caused by the negligence of appellant.

Under the issues joined there was a trial by jury and a verdict for appellee in the sum of $3,200. Judgment was rendered on the verdict, from which this appeal is prosecuted.

The errors relied on for reversal challenge the sufficiency of the facts averred in each of the first, second and third paragraphs of the amended complaint, also the overruling of appellant's motion for judgment on the answers to the interrogatories, notwithstanding the general verdict, and overruling the motion for a new trial.

Omitting the formal parts, the first paragraph of the amended complaint, in substance, avers that appellant owns and operates a line of railroad from the city of Chicago, in and through Huntington and Wabash counties, in the State of Indiana, to the city of Erie, in the State of Pennsylvania; that it owns a large number of locomotives, cars, trains, etc., which it operates on said road; that it maintains along its road, side-tracks, switches, stations, platforms, systems of signals and all usual and necessary equipment for the management and operation of such road; that on December 11, 1905, William E. McCalley, appellee's decedent, left Huntington, Indiana, as engineer on engine No. 776, going west, which was the head engine of an extra train running as a double-header; that when said train left Huntington the crew had meeting orders for trains No. 32 and No. 74, east bound, at Bippus, Indiana, the first station west of Huntington; that when said extra train came

to the switch at Bippus, the operator at said station called engineer McCalley up main track, and a "Number nineteen train order" was handed on, changing the meeting order for No. 74 from Bippus to Servia, Indiana, which is on defendant's road, and at which place a telegraph operator is placed and provided with signals, blocks, lights, flags, and all things necessary to signal trains; that when said extra train No. 776 arrived at Servia, said McCalley brought his train nearly to a stop some distance east of the switch, and the head brakeman ran ahead to throw the switch, preparatory to heading in on to the siding; that before said brakeman came near the switch, the operator at Servia gave said McCalley a signal, calling him on down main track; that it was the duty and business of said operator, then and there in the employ of defendant, to give proper signals to employes managing and running trains for defendant on its road; that it was then and there the duty and business of said McCalley to obey the signals given him by said operator, and McCalley relied and had a right to rely on the same in running his train; that when said McCalley was called up main track he whistled his brakeman, who, seeing that his train was signaled up main track, stopped and waited for his train; that said McCalley, relying on the block issued to him by said operator, went on down main track, and when within a few rods of the station at Servia, through the darkness, and from the reflection of the headlight on his own engine, he saw train No. 74 standing in front of said depot on the main track; that said McCalley applied his air, reversed his engine, and whistled for brakes, and did everything possible to stop his train, but without success; that a collision occurred between said trains No. 776 and No. 74, and said McCalley was thrown under his engine and killed; that said operator was in the employ of defendant corporation and in charge of the block signals at the station of Servia, and negligently gave to said McCalley, as engineer, a signal calling him up main track, when train No. 74 already

had the right of way on the main track, and by reason of his negligence in so doing said engineer was killed, as aforesaid.

It is further averred that appellee is the duly appointed administrator of decedent's estate; that decedent left surviving him Allie M. McCalley, his widow, Alonzo V. and Frank McCalley, his children, aged respectively twenty and thirteen years, who were dependent upon him.

The second paragraph of amended complaint, contains substantially the same averments as the first paragraph, and, in addition thereto, alleges that it was about 5.45 o'clock p. m. when the accident occurred; that it was dark; that train No. 74 was standing on the main track in front of the station at Servia, and the headlight on engine No. 809, drawing said train No. 74, was not burning so as to be visible to the crew of said extra train; that the engineer on train No. 74 was in the service of appellant, and at the time acting in the line of his duty and in charge of the engine drawing said train; that as such engineer it was his duty to have the headlight on his engine burning so as to be visible as a signal to approaching trains; that said McCalley, as soon as he saw train No. 74, made every effort to stop his train, but without success; that by reason of the negligence of the engineer on said train No. 74 in failing to have his headlight burning so as to be visible to the employes on an approaching train, and by reason of said operator giving said McCalley the signal to come down the main track, the latter did proceed on down the main track with his train, which collided with train No. 74, causing his death, by and on account of the negligence aforesaid.

The third paragraph of the amended complaint combines the averments of the first and second paragraphs, and for the purposes of this appeal is the same as the latter.

The sufficiency of each paragraph of the complaint is questioned by demurrer and by independent assignment of error. It is urged that neither paragraph states a cause of action under the common law, and that the facts averred are

insufficient to bring the complaint within any of the provisions of the employers' liability act; that it fails to show that appellant owed a legal duty to appellee's decedent which was negligently omitted or performed to his injury.

The objections urged are equally applicable to each paragraph of the complaint. Evidently the pleader has sought to state a cause of action under the statute. Where this is done, facts must be averred which bring the case within the provisions of the statute relied on. *Chicago, etc., R. Co.* v. *Barnes* (1905), 164 Ind. 143, 148, 73 N. E. 91.

The specific objection urged against the complaint is that the allegations charging negligence are mere conclusions, and not the averment of facts. This objection is specially urged with great emphasis against the statement that "the operator at Servia gave said McCalley a signal calling him on down main track," also "that it was the duty and business of said operator \* \* \* to give proper signals to employes," and that it was "the duty and business of said McCalley to obey the signals given him by said operator."

Doubtless the form of these averments could be improved, but to say that the engineer was given "a signal calling him on down main track" is not the statement of a conclusion, but of a fact. In railroad business having to do with the operation of trains, to say that a man is given "a signal to stop" or "a signal to back up" or to use other statements of similar import, is not to state a conclusion, but a fact.

Webster defines the word signal to mean "a sign, event or watchword which has been agreed upon as the occasion of concerted action. A sign made for the purpose of giving notice to a person of some occurrence, command or danger." Applying this definition to the business of operating railroad trains, it is apparent that the pleader in a case like this cannot go far in defining the alleged signal and its meaning,

without pleading evidence, which is as much condemned by the rules of good pleading as the statement of conclusions instead of facts.

The averments of the complaint show that appellee's decedent, in charge of appellant's engine No. 776, was approaching the station at Servia from the east, under 3. orders to meet another train at that point; that he checked the speed of his engine, and sent his brakeman to throw the switch, preparatory to taking the siding, when he received from the operator a signal, which he answered by sounding the whistle of his engine, and then proceeded down the main track to the front of the station where the collision occurred, resulting in his death. On motion to make the complaint more specific, the court doubtless would have required some additional averments as to the kind and character of the signal given, its meaning and application to the particular case, but as against the demurrer, the complaint is not insufficient for failure to aver additional facts in regard to the alleged signal.

Under the statute, the operator stood in the place of the master, and his acts in giving signals to regulate and control the movement of trains, were the acts of appellant. 4. Aided by the other averments of the complaint, the statements "that it was the duty and business" of the operator to give proper signals, and that it was "the duty and business" of the engineer to obey the signals so given, were averments of ultimate facts, and not mere conclusions of the pleader.

The complaint shows a fully-equipped telegraph office and signal station at Servia, on appellant's road, with an employe in charge, whose business it was to operate the same, and who gave the alleged signal of which appellee complains. The words "duty and business," employed by the pleader, plainly refer to the work of the operator in charge 5. of the station, and likewise to the work and business of the engineer. There are instances where the

word ''duty'' may be used in a pleading to designate the character of work to be done, or the act to be performed, in pursuance of an employment, and when so used the allegation is one of ultimate fact, and not subject to the criticism that it states only a conclusion of the pleader. There is, however, a clear distinction between such use of the word ''duty,'' and its use in a general statement charging that it is the duty of a person to do, or to refrain from doing, a certain act or thing, intending thereby to charge that by reason of contractual relations, or by implication of law, such person is obligated to do or not to do the particular thing averred.

In the latter case the weight of authority is decidedly to the effect that such averments state conclusions of law, and not facts. But the use of the word duty in the case at bar, clearly comes within the former class, and is employed in the sense of work or labor. This view is strengthened by the fact that it is used in connection with the word ''business.'' *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, 254, 71 N. E. 218, 71 N. E. 660; *Cleveland, etc., R. Co.* v. *Morrey* (1909), 172 Ind. 513, 520, 88 N. E. 932; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290, 315, 76 N. E. 1060; *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, 675, 83 N. E. 369, 17 L. R. A. (N. S.) 542; *Princeton Coal, etc., Co.* v. *Roll* (1904), 162 Ind. 115, 119, 66 N. E. 169; *Chicago, etc., R. Co.* v. *McDaniel* (1893), 134 Ind. 166, 172, 32 N. E. 728, 33 N. E. 769; *Hay* v. *Bash* (1906), 37 Ind. App. 167, 172, 76 N. E. 744; *Chicago, etc., R. Co.* v. *Hamilton* (1908), 42 Ind. App. 512, 517, 85 N. E. 1044; *Pittsburgh, etc., R. Co.* v. *Rogers* (1910), 45 Ind. App. 230, 242, 87 N. E. 28.

Our statute (§343 Burns 1908, §338 R. S. 1881) requires ''a statement of the facts constituting the cause of action in plain and concise language, without repetition,

6. and in such manner as to enable a person of common understanding to know what is intended.''

The complaint does not depend on inferences for its sufficiency. Defendant was advised of the case it was to meet with sufficient certainty to satisfy the rules of pleading requiring facts to be directly and positively averred, showing that defendant owed a legal duty to the complaining party, which it negligently performed, or negligently failed to perform, to his injury. *Cleveland, etc., R. Co.* v. *Morrey, supra; Indianapolis, etc., Traction Co.* v. *Newby* (1910), 45 Ind. App. 540, 543, 90 N. E. 29, 91 N. E. 36.

The first paragraph states a cause of action under the fourth clause of section one of the employers' liability act (§8017 Burns 1908, Acts 1893 p. 294). As the second and third paragraphs contain the same allegations as the first, and some additional averments, they are likewise sufficient as against the demurrer.

The next question arises on the motion of appellant for judgment on the answers to the interrogatories, notwithstanding the general verdict. The substance of the answers, in so far as material to the questions presented, is as follows: The accident occurred on December 11, 1905, on which day appellant had in force the following block-signal rules: "Rule 3. The several positions of train order signals described in Rule 2 will be indicated at night by different colored lights at the top of the signal posts, red signifying danger, stop; green signifying caution, proceed with care; and white signifying safety, no train on the block." Appellant's road passed through Huntington, Bippus, and Servia, Indiana, and at each of said places it maintained a station, consisting of a telegraph office, block-signal system and switches. On said date appellee's decedent, William E. McCalley, was employed by appellant as a locomotive engineer, and had been so employed for seven years immediately prior thereto, and previous to that time as a fireman. Decedent had made frequent trips over said road, and was familiar with the tracks and switches at said places. On said date he was in charge of locomotive No. 776, and a

freight-train out of Huntington, going west, said train being known as "extra No. 776," and it consisted of two locomotives and about fifty cars. McCalley was the head engineer in charge of the movement and operation of said train. He had received orders to meet No. 74 at Bippus, and when his train approached Bippus, the operator at the station "winked the block," which was done by repeatedly moving the signal up and down, so as to make the different lights appear and disappear. The green light was the signal shown at night to indicate that there was an order—known as "nineteen order"—for the approaching train, and such signal was displayed at Bippus and said McCalley received an order, known as a "nineteen order," at Bippus to meet train No. 74 at Servia. The order received by McCalley at Bippus was as follows: "No. 74, Engine 809, and Extra No. 776, west, will meet at Servia instead of Bippus." As extra No. 776 approached Servia it stopped, and the head brakeman went out from the train, forward to the east switch with a lantern, for the purpose of throwing the switch. The operator at Servia saw extra train No. 776 slow up, or stop, and the brakeman come out from the train towards the east switch, and thereupon said operator gave to said train a white block, which was not given in pursuance of orders from the train dispatcher at Huntington. The block was not "winked" at Servia, as train extra No. 776 approached the east switch, nor at any time preceding the collision, nor did said extra train take the siding at Servia. The only signal displayed at Servia for train No. 776 was a white block, and when so given No. 74 was on the main track, so as to clear the passing track at both the east and west switches, and was there by the order of the dispatcher at Huntington.

On December 11, 1905, and for many years prior thereto, appellant had in force certain rules governing the running of trains and the action of the engineers in charge of them, and McCalley was familiar with said rules prior to and on December 11, 1905, of which the following were then in

force: "No. 522. A train, or any section of a train, must be governed strictly by the terms of orders addressed to it, and must not assume rights not conferred by such orders. * * *" "No. 86. When a train of inferior class meets a train of a superior class, on single track, the train of inferior class must take the siding." "No. 84. * * * (A) East-bound trains have absolute right over west-bound trains of the same class, unless otherwise ordered." "82. All extra trains are of inferior class to all regular trains of whatever class." "19 orders. A green flag by day, or a green light by night, will be displayed by operators having '19 orders' to be delivered. These orders must not be placed so that they can be mistaken for the block signal, and it must be understood that they have no connection whatever with the block signals. They are simply to notify train men that there are '19 orders' for them at that office, which they will go to the office and get, or the operator will hand to them as they pass. The displaying of a colored block signal shall not be understood as authorizing a train to use the main track at a station where, under the general rules, or under orders previously received, they should take the siding."

Train No. 74 was a regular east-bound train, and was superior to extra No. 776. Under the rules of appellant, in force December 11, 1905, it was the duty of a west-bound train to take the side-track at any point where it had orders to meet an east-bound train of the same or superior class. It was the duty of McCalley, as the engineer in charge of train extra No. 776, under orders received by him at Bippus, to take side-track at Servia. It was moonlight at the time of the accident to said McCalley, and at that time appellant had in force rule 232, which provided that engineers must "keep a constant lookout on the track for danger-signals and obstructions." Appellant's track at and near Servia was straight from a point east of the east switch to the point where the accident occurred, and there was no obstruction, at and immediately prior to the time of the accident to Mc

Calley, which prevented him from seeing the engine of train No. 74 on the main track at Servia. The headlight on McCalley's engine was burning at the time of the accident, and was not smoky at the time of and immediately prior thereto.

Appellant insists that under well-established rules of law, the answers to the interrogatories are in irreconcilable conflict with the general verdict, and especially urges in this connection the finding that the rules of appellant, in force at the time of the accident, known to the decedent, required a west-bound train to take the side-track at any point where it had orders to meet an east-bound train, and also that it was McCalley's duty, as engineer, under his orders received at Bippus, to take the side-track at Servia at the east switch to meet train No. 74. Also that the rules provide that a colored block signal will not authorize a train to use the main track, where under the general rules or orders previously received it should take the siding.

It is apparent that the finding that "it was the duty of McCalley, under orders received at Bippus," to take the switch at Servia, is not the equivalent of a finding based on all the evidence that such was his duty, for the interrogatory expressly limits his duty to the requirements of his orders. Furthermore, the complaint proceeds on the theory that his orders required him to take the siding at Servia, and alleges that he was about to do so when, by signal from the operator, he was called on down the main track.

The general verdict finds every issuable fact in favor of the prevailing party, and in passing on this motion we are not permitted, under our procedure, to consider the 7. evidence, but must look solely to the general verdict, the interrogatories and the answers thereto, and to the facts provable under the issues. *Ittenbach* v. *Thomas* (1911), 48 Ind. App. 420, 96 N. E. 21; *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662, 64 N. E. 92; *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25, 25 N. E. 156.

Under the issues of this case, proof was admissible to show that notwithstanding the printed rules promulgated by the company, by long usage and custom, a rule was established and known to and acquiesced in by both McCalley and appellant, by which an engineer holding orders requiring him to take his train over the side-track, on receiving the white block signal, meaning "safety, no train on the block," and answering the same, was permitted to take his train down the main track at least as far as the station, notwithstanding the printed rules or previous orders to the contrary known to him. *Pennsylvania Co.* v. *McCormack* (1892), 131 Ind. 250, 257, 30 N. E. 27; *Springer* v. *Byram* (1894), 137 Ind. 15, 25, 36 N. E. 361, 23 L. R. A. 244, 45 Am. St. 159; *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 24, 49 N. E. 582, 69 L. R. A. 875, 71 Am. St. 301; *Pennsylvania Co.* v. *Coyer* (1904), 163 Ind. 631, 637, 72 N. E. 875; *Stalcup* v. *Louisville, etc., R. Co.* (1897), 16 Ind. App. 584, 590, 45 N. E. 802; *Syndicate Improv. Co.* v. *Bradley* (1895), 6 Wyo. 171, 43 Pac. 79, 84, 44 Pac. 60; *Reese* v. *Hershey* (1894), 163 Pa. St. 253, 29 Atl. 907, 43 Am. St. 795; *Pennsylvania Co.* v. *Stoelke* (1882), 104 Ill. 201, 204; *Clark* v. *Manhattan R. Co.* (1902), 79 N. Y. Supp. 220, 77 App. Div. 284; *Daley* v. *American Printing Co.* (1891), 152 Mass. 581, 26 N. E. 135.

For the reason above stated and on the authority cited we hold that the trial court did not err in overruling the motion for judgment on the answers to the interrogatories.

We come now to the alleged errors presented by the overruling of the motion for a new trial, which was asked for numerous reasons, among them that the verdict (1) is not sustained by sufficient evidence, and (2) is contrary to law.

If there is evidence tending to prove all the facts essential to appellee's recovery under any paragraph of the complaint, the verdict cannot be disturbed for insufficiency of the evidence. This court will not

weigh the evidence, but will decide whether there is, or is not, a total failure of evidence to support any material fact essential to a recovery.

It is the duty of a railroad company to adopt and promulgate reasonable rules for the running of its trains and the safety of its employes. It is likewise the duty of an employe to obey such reasonable rules when brought to his notice, and if he violates them, and is injured as a proximate result of such violation, he is guilty of contributory negligence, and cannot recover on account thereof, unless there are other facts which, in the particular instance, excuse the employe, or relieve him from the duty of strict obedience, or unless the rule in question has been in some way abrogated or annulled so as not to be binding on him at the time of his injury. *Cincinnati, etc., R. Co.* v. *Lang* (1889), 118 Ind. 579, 584, 21 N. E. 317; *Pennsylvania Co.* v. *Whitcomb* (1887), 111 Ind. 212, 218, 12 N. E. 380; *Pennsylvania Co.* v. *Coyer, supra,* 638; *Terre Haute, etc., R. Co.* v. *Becker* (1896), 146 Ind. 202, 217, 45 N. E. 96; *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 541, 87 N. E. 723; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290, 313, 76 N. E. 1060.

In 5 Thompson, Negligence §5404, the author says: "If an employer knowingly suffers his rules established to promote the safety of his employes to be habitually violated by them, they will be treated as having been abrogated with his consent, and he will not be permitted to set up a violation of such a rule in an action against him by an employe, or by his representative in case of his decease, as contributory negligence and as a reason why he should not recover. The reason is that a rule, although established and published in writing, may as well be abrogated by the author of it by acts or neglect *in pais,* as by an affirmative order or proclamation to that effect. The master will not be permitted to suffer a general nonobservance of a rule designed to promote the safety of his serv-

ants, and then to revive it for the purpose of tripping up and defeating the action of a particular servant, who, but for the rule, has an action against him for damages. He will not be allowed to neglect it and to let it fall into disuse as to his servants generally, and then to revive it and enforce it after the fact against a particular servant who is suing him for damages.''

On the subject of when a rule may be considered abrogated, the same author says: ''The abrogation by an employer of a rule governing the conduct of employes may be presumed when it is frequently and openly violated for such a length of time that the company could, by the use of ordinary care, have ascertained its nonobservance; and mere nonobservance thereof by an employe does not render him guilty of contributory negligence, precluding recovery for injuries which might have been avoided if he had observed it.'' 5 Thompson, Negligence §5404.

In *Farris v. Southern R. Co.* (1909), 151 N. C. 483, 66 S. E. 457, the defendant was held charged with knowledge of a custom among its employes in crossing its tracks, where the custom had existed for six months.

The same court held that knowledge was shown of a custom of employes to ride on an engine, where the evidence showed the custom to have been in vogue for nine years. *Heilig v. Southern R. Co.* (1910), 152 N. C. 469, 67 S. E. 1009.

In *Barry v. Hannibal, etc., R. Co.* (1888), 98 Mo. 62, 11 S. W. 308, 14 Am. St. 610, where a rule of the company stated that an engineer must not permit the fireman to operate the engine, except when the engineer himself is on the engine, and required both to remain on the engine while on duty, and the engineer was injured while off his engine, it was held that negligence of the engineer could not, on such facts, be ruled as a matter of law, and that where there was an established usage of the company's engineers, known and acquiesced in by its superior officers, to allow an engineer to

alight from his engine, and to permit his fireman to make short moves, the engineer remaining near enough to give directions, such custom amounted to an abandonment of the rule to the extent of the custom.

The supreme court of Michigan has held that violation of the rules of the company will defeat recovery, but that an exception exists where the "company itself has sanctioned the custom of its employes to act in violation of the rules. and has thus virtually abrogated them. This exception is based upon the theory that it would be unjust in employers to establish rules, and then sanction their violation, and interpose such violation as a defense. * * * Only when this rule is violated by brakemen so universally and notoriously that it is a fair inference that the company sanctioned and approved the violation is the company barred from this defense." *Nichols* v. *Chicago, etc., R. Co.* (1900), 125 Mich. 394, 397, 84 N. W. 470.

In *Cleveland, etc., R. Co.* v. *Gossett, supra,* 543, our Supreme Court, in speaking of the violation of rules, said: "There are, however, a great many circumstances attending the violation of rules which modify the act and give it such character, with respect to negligence, as will make it a question for the jury."

In *Kane* v. *Erie R. Co.* (1906), 142 Fed. 682, 73 C. C. A. 672, where it was shown to be a part of the duty of a fireman to clean the engine, and it was proved that it was the custom on defendant's road for a fireman to do the work while the engine was moving, and such custom was known to and sanctioned by the company, although there was a rule in force forbidding a fireman so to do, it was held that the effect of such custom was to abrogate the rule, and that the fireman could not, as a matter of law, be held guilty of contributory negligence, preventing a recovery, for an injury received while so cleaning his engine; that the question was one for the jury. To the same effect are the following cases: *Brady* v. *New York, etc., R. Co.* (1903), 184 Mass. 225, 228,

68 N. E. 227; *Galveston, etc., R. Co.* v. *Sweeney* (1896), 14 Tex. Civ. App. 216, 36 S. W. 800; *Gulf, etc., R. Co.* v. *Knox* (1901), 25 Tex. Civ. App. 450, 61 S. W. 969; *Sutherland* v. *Troy, etc., R. Co.* (1891), 125 N. Y. 737, 26 N. E. 609; *Somerset, etc., R. Co.* v. *Galbraith* (1885), 109 Pa. St. 32, 1 Atl. 371; *Kane* v. *Northern Cent. R. Co.* (1888), 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339; *Baltimore, etc., R. Co.* v. *Leathers* (1895), 12 Ind. App. 544, 40 N. E. 1094; 5 Thompson, Negligence §§5404-5408, and cases cited.

Considering only the rules and the orders held by appellee's decedent, it is apparent that he should have taken the siding at Servia, notwithstanding the white block signal given to him by the operator, and that failing so to do he was guilty of negligence which contributed to his injury, and should prevent a recovery. But under the issues we are required to go farther, and ascertain whether there is some evidence from which the jury may have rightfully found that he was not guilty of negligence in using the main track, notwithstanding the rules of the company and the orders held by him.

In passing on the motion for judgment on the answers to the interrogatories, we have held that the special verdict is not in irreconcilable conflict with the general verdict because, under the issues, evidence was admissible to prove a custom establishing a rule of operating trains on appellant's road which would so modify or annul the printed rules as to authorize McCalley to proceed on down the main track to the station at Servia, without being guilty of contributory negligence as indicated by the printed rules.

In passing on the error assigned in overruling the motion for a new trial, asked on the ground of the insufficiency of the evidence, we are not permitted to determine the question from the evidence admissible under the issues, independent of the evidence actually shown by the record, nor are we to weigh the evidence if conflicting on that issue, but we must determine whether there is any evi-

dence in the record from which the jury may have found such custom to be established, and binding on appellant.

It is not questioned by appellant, but on the contrary it asserts, that an engineer holding orders requiring him to take the siding at a certain place on appellant's road, on approaching the station at such place, may proceed on down the main track to the station, if before so doing the block is winked, and in addition thereto, at night a green light is displayed or in the daytime a green flag.

There is evidence tending to prove that winking the block is done by moving the semaphore up and down, and that in so doing the lights are changed from red to white, and there is other testimony to the effect that colors other than red and white also appear in winking the block; that there is no difference in dropping the block and winking the block; that when an engineer approaches a station on appellant's road, under orders to take the siding, he may be called down to the station to get a meeting or nineteen order, without stopping his train, by the winking of the block; that on seeing the light changed to white the engineer answers the signal by sounding his whistle, and if the light remains white he moves down the main track to the station, and is governed by the orders there received; there was also other testimony to the effect that he should not do so unless, in addition to the winking of the block, a green light other than that of the semaphore was displayed at the station; that trains do not usually stop to receive such orders, but they are handed on as the train passes; that it was the usual custom on appellant's road at the time of the accident when the white block was given an approaching train, having orders to take the siding at that station, not to go in on the switch, but to proceed on down the main track to the station for orders; that it had been a custom among engineers on appellant's road for about five years prior to the accident, on approaching a station under orders requiring them to take the siding, on the winking of the block, to

run their trains down to the station on the main track for an order; that for thirteen years prior to the accident such custom was known to and approved by appellant's train master; that a white block at Servia meant that there was no train on the track, between that place and Boliver, the next station west; that there was no written or printed rule in force on appellant's road, and never had been, requiring engineers to take their trains down the main track to the station on seeing the nineteen order signal displayed; that when decedent approached the east switch at Servia he stopped his train and sent his head brakeman forward to throw the switch preparatory to taking his train in on the siding; that the operator saw the brakeman approaching the switch and threw the block from red to white, and McCalley answered the signal by sounding the whistle, and immediately "pulled down the main track" to the station; that the block lights were visible, but looking down the main track in the direction of the station no headlight or train was visible until McCalley's engine was within two or three car lengths of the engine with which he collided.

The question here presented is that of the contributory negligence of decedent. *Diamond Block Coal Co.* v. *Cuthbertson, supra,* 313.

Can it be said that a person of ordinary prudence would not have done as the decedent did under all the facts of this case as disclosed by the evidence, or can it be said, as a matter of law, that he was guilty of negligence contributing to the collision which caused his death, by running his train down the main track to the station, instead of taking the siding?

Where the evidence is undisputed, and all tends to show contributory negligence, the question is one of law for the court. But where it is conflicting on the subject, or is of such a character that reasonable minds may draw different conclusions therefrom, the question of contributory negligence is one of fact to be submitted to and de-

cided by the jury. The jury has the right to consider all the evidence, and determine its weight as applied to any issuable fact in the case, and also to consider what may be reasonably inferred from what is thus proved.

If there is any conflict in the evidence given on the trial on the subject of contributory negligence, no matter what its weight or character, nor to what extent it is apparently overborne or contradicted by other evidence, the decision of the issue should be submitted to the jury. *Beaning* v. *South Bend Electric Co.* (1910), 45 Ind. App. 261, 267, 90 N. E. 786; *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32, 40, 73 N. E. 592, 74 N. E. 613; *Diamond Block Coal Co.* v. *Cuthbertson, supra,* 306; *Farmers Nat. Bank* v. *Coyner* (1909), 44 Ind. App. 335, 338, 88 N. E. 856; *Cleveland, etc., R. Co.* v. *Gossett, supra,* 537; *Collins* v. *Catholic Order, etc.,* (1909), 43 Ind. App. 549, 559, 88 N. E. 87.

We conclude, therefore, that the question of the contributory negligence of appellee's decedent was properly submitted to the jury.

There was evidence tending to prove a custom from which the jury in weighing the evidence could find the decedent free from negligence in running his train down the main track to the station at Servia, and also that such custom was known to and acquiesced in by appellant.

The jury having so found, on the facts of this case, we are not warranted in reversing the judgment for insufficiency of the evidence to support the verdict.

A new trial was also asked on account of alleged errors in giving certain instructions and in refusing certain instructions tendered by appellant. What we have said on other questions in this opinion is applicable to some of the questions raised on the instructions, and need not be repeated.

Instructions five, eighteen and nineteen, tendered by appellant, and refused, present phases of the proposition that

appellee must recover on the allegations of negligence charged in his complaint, or not at all. These were proper instructions but the same questions were covered by other instructions given by the court.

Instruction five told the jury that if the alleged signal complained of was given by order of the train dispatcher, there could be no recovery on that account, as the negligence charged in regard to the signal was that of the operator.

The jury in answer to interrogatory twenty-two and one-half expressly found that the signal was not given by order of the train dispatcher, so that if there was error in refusing the instruction it was harmless to appellant.

By different language, most that is included in instructions eighteen and nineteen, refused, is included in twenty-one, tendered by appellant and given by the court.

Complaint is also made of the refusal of instruction eight, but the record affirmatively shows that it was given.

Instruction fourteen, tendered by appellant and refused, told the jury, in effect, that appellee's decedent could not recover if he violated his orders in taking his train over the main track to the station at Servia. But the court gave instruction nine, tendered by appellant, which told the jury that if McCalley was "injured or killed without fault on the company's part, or by reason of his failure to comply with the orders, rules and directions of the company, he cannot recover," nor can his administrator.

The other instructions refused were sufficiently covered by those given, to render harmless their refusal.

Complaint is also made of the giving of instruction four, tendered by appellee, on the measure of damages. This instruction is incomplete, but states the law correctly as far as it goes, and the error in giving it, if any, is waived by appellant by failure to tender a more complete instruction on the subject. Elliott, App. Proc. §§647,

736; *Fitzgerald* v. *Goff* (1884), 99 Ind. 28, 39; *New Castle Bridge Co.* v. *Doty* (1907), 168 Ind. 259, 266, 79 N. E. 485; *Voris* v. *Shotts* (1898), 20 Ind. App. 220, 223, 50 N. E. 484.

Furthermore, on the facts of this case, the size of the verdict is such as to warrant the conclusion that appellant was not harmed by the instruction.

The court gave instructions covering the non-liability of appellant, where the injury resulted from the inexcusable violation of its reasonable rules and of its orders, in such way as clearly to set before the jury the defense made to the suit. The instructions taken as a whole state the law fully and fairly to both parties, and there is no available error shown by the refusal, or in the giving of instructions.

The objections made to the admission and to the exclusion of certain evidence present no questions meriting extended consideration, for it is apparent from the record that appellant was not harmed by any of such rulings.

The court did not err in overruling the motion for a new trial. No error harmful to appellant appearing in the record, the judgment is affirmed.

Myers, Hottel, Ibach, Adams and Lairy, JJ., concur.

NOTE.—Reported in 96 N. E. 649. See, also, under (1) 31 Cyc. 115; (2) 26 Cyc. 1384; (4, 5) 31 Cyc. 54; (6) 26 Cyc. 1392; (7) 38 Cyc. 1930; (8) 26 Cyc. 1440; (9) 26 Cyc. 1513; (10) 3 Cyc. 348; (11) 26 Cyc. 1157; (12) 26 Cyc. 1162; (13) 26 Cyc. 1161; (14) 3 Cyc. 347, 348; (15) 3 Cyc. 318, 319; (16) 26 Cyc. 1482; (17) 29 Cyc. 630; (18) 38 Cyc. 1517; (19) 29 Cyc. 633; (20) 3 Cyc. 348; (21) 38 Cyc. 1711; (22) 38 Cyc. 1817; (23) 38 Cyc. 1693; (24) 38 Cyc. 1814; (25) 38 Cyc. 1411, 1450. For a discussion of the disobedience of the rules or regulations of a master as affecting the right of a servant to recover for personal injuries, see 8 Ann. Cas. 3; 10 Ann. Cas. 152; Ann. Cas. 1912A 84. As to pleading and practice under Lord Campbell's Act and kindred enactments, see 48 Am. Dec. 636. As to the want of due care by a telegraph operator in controlling train movements, see 75 Am. St. 637.