CODDENS *v.* CHICAGO NATIONAL LIFE INSURANCE COMPANY.

[No. 14,777.   Filed May 16, 1934.]

*George N. Beamer, Woodson S. Carlisle, Parker, Crabill, Crumpacker & May,* for appellant.

*Lee D. Mathias, E. R. Elliott, Shively & Arnold,* for appellee.

SMITH, J.—This is an appeal from a judgment rendered against appellant upon a directed verdict in

a suit to recover insurance upon the life of appellant's deceased husband.

The complaint was in two paragraphs which are substantially alike. The first paragraph seeks to recover for insurance under the terms of two insurance policies issued upon the life of one Adiel J. Coddens, husband of appellant, payable to the appellant as beneficiary upon what is termed a double liability for accidental death.

On the 6th day of December, 1928, the appellant's decedent took out two policies of life insurance with appellee, which contained provisions designated as the "convertible clause" and the "continued protection clause." These provisions become important in this decision and are as follows, the convertible clause reading:

"The insured shall have the right to convert this policy, within five years from the date of its issue, without medical examination, at the end of any anniversary date hereof, provided it is in full force and effect at date of written request for conversion, for a regular non-participating life or endowment policy of similar amount at the company's then published rate for such policy, based on the age and occupation of the insured at the time of such exchange."

The continued protection clause reads:

"All premiums and benefits cease under this policy upon the insured attaining the age of 44 years. However, upon receipt of this policy, together with the insured's request for continued protection on a similar plan, the Company will issue a new policy dated concurrently with the expiration of this insurance. The monthly rate on this new policy will be Two Dollars ($2.00) and the benefits thereunder will be commensurate with the increased premium and the advancing age of the insured, but shall not be renewable beyond age 55."

The first paragraph of complaint alleges that the insured became 44 years of age on the 5th day of November, 1929, and that said policies further provide "31

days of grace without interest shall be allowed in the payment of any premiums after the first, during which time this policy shall remain in force." The complaint further alleges that the deceased met his death as the result of an accident on the 5th day of December, 1929, through external, violent, and accidental means while hunting; that his gun was accidentally discharged, injuring him so that he died a very few minutes thereafter; that, on the 2d day of December, 1929, within the 31 days from the date when the insured had reached the age of 44 years, appellant paid to an agent of appellee the sum of $10 and surrendered the two policies, and thereby continued in force these policies under the clause above quoted, called the "continued protection clause;" that, after the death of the appellant's insured, appellant demanded of appellee an extension or new policies, and received a letter from appellee stating that the application for the insurance was received on the 7th day of December, 1929, and that no policy of insurance was issued to the insured within his lifetime; that, prior to the time that the insured reached the age of 44 years, he received a letter from appellee reminding him that the policies of insurance expired on his reaching 44 years of age, and advising him that he had the privilege in said policies to continue the protection on a similar plan at the rate of $2 per month, and directing him to take his policies and surrender them to the agent of the insurance company in the city of South Bend, and pay the increased premium rate, and that the insurance would be continued as said clause provided; that appellant went to the office of the agent in South Bend several times, but did not succeed in finding the agent in the office until the 2d day of December, 1929, when she surrendered the policies and paid him $10; that, by reason of the facts aforesaid, the appellee is indebted to the appellant in the sum of $4,000, together

with interest; that the only reason the insured and the appellant failed to surrender the two policies of insurance to appellee's agent prior to December 5, 1929, and pay the premium on the continued insurance was because appellant and her husband were unable to locate appellee's agent, without fault on their part, although they made diligent efforts to do so.

The second paragraph of complaint alleges the same state of facts as the first, except it charges that the insured received a letter from the appellee after the time he had reached the age of 44 years, notifying him that his said policies of insurance had expired because of his reaching that age. The other allegations of this paragraph of the complaint are the same as the first, except that the appellant prays damages in the sum of $4,000.

Both paragraphs of complaint proceed upon the theory of a recovery under the clause in the policy known as the "continued protection clause."

The issues were closed upon these two paragraphs of complaint by an answer in general denial.

The cause was submitted to a jury for trial, and, at the close of all the evidence in the case, the appellee moved the court to direct a verdict for it, which motion was sustained, and the court instructed the jury to return such verdict. Appellant reserved proper exceptions and, within the time, filed her motion for a new trial which was overruled, this action being the only error assigned.

The grounds set forth in the motion for new trial which properly present the questions are: (1) The verdict of the jury is contrary to law; (2) the verdict of the jury is not sustained by sufficient evidence; (4) the court erred in giving the defendant's instruction numbered one at the conclusion of the evidence, being the binding instruction directing the verdict for appellee.

These grounds in the motion for new trial present the question of whether there is any evidence under the issues as formed, or evidence from which any legitimate inferences could be drawn, to warrant the submission of the cause to the jury.

A peremptory instruction should be given only where there is a total lack of evidence upon some material issue; or where there is no conflict and the evidence is susceptible of only one inference, and that inference is favorable to the party asking the instruction. *Gulbranson* v. *Hart et al.* (1929), 90 Ind. App. 171, 177, 168 N. E. 483; *Cleveland, etc., Railway Company et al* v. *Gossett, Admx.* (1909), 172 Ind. 525, 87 N. E. 723.

The evidence in this case shows that the appellant upon the receipt of the letter from the appellee notifying the insured that he could obtain the benefit from continued protection by taking these two policies to the office of the agent in South Bend, surrendering the same, and paying the extra premium as provided therein, took the policies, and went to the office as indicated in the letter; that appellant does not know whether she went before November 5, 1929, the date insured would be 44 years of age, or after, but that she went several times, and in each instance could not find the agent of the company there; that finally on the second day of December, 1929, she again went to the office of the agent of the appellee, and found one McDonald, the agent, and surrendered the policies to him, and gave him $10; that he gave her a receipt therefor, and said that he did not have anything with him, but that it could be fixed up later, just as soon as he got back to the office; that the office was locked at the time; that appellant told him she had been there so many times "that the thirty days was almost up," and that she would like to take care of it; that her husband

had received a letter from the insurance company before she came to the insurance office, but it had been destroyed; that this letter said that the policies could be renewed, and that she should go to the South Bend agency to do it, and that is why she came there a number of times as directed in the letter, but did not find the agent there. The evidence further shows that she stated, on the day she surrendered the policies and paid the $10, "I told him I was there to see him (meaning the agent) about renewing the policies just as they said, that I had been there several times, and that if I could not get somebody there my thirty days would be up, and I would not get any insurance any more. He said he would look after it and signed the receipt immediately;" that the agent also told her that the policies would be in effect as soon as he gave the receipt. The appellant further said that, when she gave him the policies and the $10, the agent said he did not have the right kind of receipt with him, but he had a receipt that would do just as well.

On cross-examination, appellant testified that she told the agent she wanted to renew the policies and get an extension as they had told her; that the agent had said, "Very well," and she asked him what kind of insurance it was, and told him they had been paying in and would like to keep it up; that he said they would fix it up right away and told her she would have to pay $32 per thousand with $1.50 extra for double indemnity, and that she would have to pay six months in advance; that she then told the agent that she had only $10 with her but, when the policy came back, she would give him the balance. Appellant further testified that the agent told her that the new form of policy would be a "whole life paying every six months;" that she "thought the insurance extended right on; that is the way I understood it;" that nothing was said to her about a medical

examination or about Mr. Coddens' (the insured) "attaining the age of 45."

On December 12, 1929, after the insured's death, appellant wrote to appellee a letter in answer to one she had received, in which she said:

"In regard to this letter, I know that these two policies terminated at Mr. Coddens' 44th birthday but didn't you send Mr. J. E. McDonald a letter telling him I was allowed to take out a life benefit policy on my husband? Well it is to that policy that I am referring. I have a receipt that I took out insurance for him so will you be so kind and look that up for I do think I am entitled to his insurance and need it very badly."

Policies of insurance were introduced in evidence containing the clauses above referred to, and in addition containing a clause which provided that the appellee promised and agreed to pay $1,000 to the appellant as beneficiary of the insured "within the term of 12 months from the date of the issue hereof." These policies were dated the 6th day of December, 1928. They contained this further provision:

"If, after the first policy year, life payments of $1 per month in advance be continued, the insurance hereunder will be automatically renewed from year to year for one year periods. No premiums will be accepted on this policy and no benefits shall be payable hereunder after the 44th anniversary of the insured's birthday."

This is the substance of all the evidence most favorable to appellant.

On the assumption that appellant was attempting to renew the policies and obtain the continued protection provided in the clause heretofore quoted, the evidence shows that she did not actually surrender the policies or make any payment of any further premiums until the second day of December, 1929, which was nearly thirty days after the insured had reached the 44th anniversary of his birthday.

Appellant contends that the period of 31 days' grace provided for in the policy permitted her to pay the premium within that time, and that she so made the same and surrendered the policies.

The policies provided that the 31 days of grace should be allowed *in the payment of any premiums after the first*, and that the policy should be in force during that time. However, the contract provided that no premiums would be accepted and no benefits would be payable after the 44th anniversary of the insured's birthday. This period of grace could not extend beyond the life of the contract, for it was a contract from year to year, and automatically ceased at the end of each year unless renewed under the terms thereof. So it could not be said that the payment made after the life of the contract, and after it had expired, and within the 31 days' grace period above mentioned was in compliance therewith, and thereby gave to the insured the benefit of the continued protection clause.

Appellant further contends that she made an effort to pay the premium, and to surrender the policies, and secure the continued protection thereunder, but the appellee prevented her from making the payment; and that her failure to pay before the policy expired was through the fault of the appellee; and that, therefore, the policies were still in force. Appellant cites as authority *Crites* v. *Capital Fire Ins. Co. of Lincoln* (1912), 91 Neb. 771, 137 N. W. 847; *Manhattan Life Ins. Co.* v. *Warwick* (1870), (Va.), 20 Gratt. 614, 3 Am. Rep. 218; and Corpus Juris 32, p. 1306, sec. 542.

None of these authorities support the proposition as contended for by appellant. The rule laid down by Corpus Juris is that where the insured can establish reasonable excuse for non-payment of the premium based upon the conduct of the company, the policy will

not be regarded as forfeited. There is no evidence in this case disclosing any conduct on the part of the appellee which prevented appellant from paying the premium and surrendering the policies and obtaining the continued protection. The most the evidence discloses is that the appellant went to the office of the agent of appellee several times, and did not find the agent in. She does not say what time of day she went, whether during office hours, or whether the office was open or closed. That she went to the office at times when the agent was not in cannot be said to be such conduct on the part of the company as prevented her from making the payment.

In the Crites case, *supra*, a note had been given for the payment of a fire insurance premium which became due on the first day of September of a certain year, and was sent to the home bank of the maker for payment. The policy provided that, if the note was not paid at maturity, the insurance would cease. The evidence showed that the maker went to the bank at 8 o'clock in the morning, as it had been the custom of the bank to open at that hour; that he waited for a half hour, and the bank did not open, but he was compelled to leave in order to complete a job of threshing; that, on that night, between 10 and 11 o'clock, the threshing machine, which was covered by the insurance policy, burned. The court held that the insured had used due diligence to pay the note at the place selected by the insurance company, and that he had the whole day in which to make such payment; that he having used reasonable diligence to pay the note on the day it was due, and the fire having occurred before the day ended, and before presentment, the policy was still in force. This case presents a different situation from the instant one, which is readily distinguished therefrom.

The Manhattan Life Insurance Company case, *supra*,

is not in point with this case. One Corbin Warwick had insured one William Sidney Warwick, who was his creditor, for $10,000. In passing upon the question, the court said that the policy was an entire contract continuing for the life of the insured, and not from year to year. When the premium became due in July, 1862, Warwick called upon the agent of the company to whom he had made all previous payments, and offered to pay it, but the agent declined to receive it, stating that the company required the premiums to be paid in New York. The premium was not paid and the insured died soon thereafter. The court held the company liable upon the theory that the company refused to receive the payment and had hindered and prevented the party obligated from paying the same.

In the instant case, the contract was from year to year, and it had expired several days prior to the actual payment. There is no evidence that the agent or the appellee or anyone on its behalf refused payment of this premium.

It is admitted that the premium for the continued protection was not paid to the agent until after the policy had expired by its own limitation.

There is some contention between the parties as to the theory upon which the complaint proceeds. We think we have stated the correct theory, and that the evidence fails to show any liability on the part of the appellee.

There being no evidence that appellant paid the premium under the continued protection clause of the policies when due, or that she was hindered or prevented by appellee from paying the premium within the time provided by the contract, there was no insurance in force at the time of the death of the insured, and hence no liability upon the appellee.

The court did not err in directing a verdict for appel-

lee. There is sufficient evidence to sustain the verdict as directed by the court, and the same is not contrary to law. The motion for a new trial was properly overruled.

Judgment affirmed.